IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARY BECK, et al., individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | No. C00-0301P <br><br> CLASS ACTION |
| v. ) ) ) | |
| THE BOEING COMPANY, a Delaware Corporation; BOEING NORTH AMERICAN, INC., a Delaware Corporation; and McDONNELL DOUGLAS CORPORATION, a Maryland Corporation, ) ) ) ) ) | |
| Defendants. ) ) ) | |

00-CV-00301-AF

## ORDER PRELIMINARILY APPROVING PROPOSED CONSENT DECREE

This lawsuit is brought by twelve female current and former employees of The

Boeing Company and its current or former subsidiaries, McDonnell Douglas Corporation

and Boeing North American, Inc. (collectively "Boeing"). The 12 named plaintiffs ("the

Plaintiffs"), brought their claims on behalf of two sub-classes of female employees or ex-

employees of Boeing, as certified by the Court in its October 18, 2001 Order: a Salaried

Sub-class and an Hourly Sub-class. The lawsuit alleges that Boeing unlawfully

discriminated against the Salaried Sub-class with respect to compensation and promotion,

and against the Hourly Sub-class with respect to overtime and promotion, in violation of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 *et seq.*, as amended by the

Civil Rights Act of 1991, 42 U.S.C. § 1981a ("Title VII"), the federal Equal Pay Act, 29

U.S.C. § 206(d) ("EPA"), the Washington Equal Pay Act, RCW 49.12.175 ("WEPA"),

and the Washington Law Against Discrimination, RCW 49.60.180 ("WLAD"). Plaintiffs

sought certification with respect to injunctive relief as to all three categories of claims,

but sought certification for monetary relief only as to the compensation and overtime claims. Boeing denies all of Plaintiffs' allegations.

The parties went through two rounds of mediation in their efforts to settle the disputes underlying this action. Initially, the parties conducted extensive mediation efforts in 2002-2003, under the guidance of mediator Linda Singer, but those negotiations ultimately resulted in no resolution of the matter. In the months leading up to the scheduled May 17, 2004 commencement of trial, however, the parties resumed settlement discussions with mediator Hunter R. Hughes, which lead to agreement on the monetary terms of a settlement, the fact of which was announced to the Court, and placed on the record, on May 14, 2004. In the ensuing weeks, the parties conducted extensive negotiations on the non-monetary issues, and have arrived at a proposed Consent Decree (the "Consent Decree" or "Decree") as a full settlement of this action, subject to this Court's final approval thereof. On July 13, 2004 the parties filed that Consent Decree with the Court, along with this proposed Stipulation and Order. A copy of the proposed Consent Decree is attached as Exhibit "1" to this Order. By entering into the proposed Decree, Boeing continues to deny all allegations of unlawful gender discrimination, and Boeing does not admit or concede that it has, in any manner, violated Title VII, the EPA, the WEPA, the WLAD, or any other law prohibiting gender discrimination in employment.

Consistent with the Court's October 18, 2001 Order, Plaintiffs and Boeing have agreed that the settlement of this case should proceed as a class action, as described more fully below, in order that the settlement will constitute a final and complete adjudication of the parties' and class members' rights, liabilities and obligations as set forth in the Consent Decree. For settlement purposes only, the parties jointly stipulate that the

Court's class certification should be amended to include claims for alleged entitlement to back pay.

**BASED ON THE PARTIES' "JOINT MOTION REQUESTING PRELIMINARY APPROVAL OF PROPOSED CONSENT DECREE," STATEMENTS OF COUNSEL FOR THE PARTIES AND THE ENTIRE RECORD BEFORE THE COURT, THE COURT FINDS AS FOLLOWS:**

The parties have agreed to a proposed settlement of this class action, subject to its approval by the Court.  It appears to the Court that the proposed settlement and Consent Decree are the result of comprehensive arms' length negotiations between the parties after extensive and contentious litigation, including voluminous discovery, moderated by a highly experienced mediator.  After reviewing the terms of the proposed Consent Decree, in the context of the extensive record in this action and the controlling legal authority, the Court finds that the proposed Consent Decree is sufficiently reasonable, adequate and fair, and consistent with relevant state and federal law, to warrant notice thereof to members of the Settlement Class and a full hearing on the fairness thereof.

**IT IS THEREFORE ORDERED THAT:**

1.	The Consent Decree and the settlement it embodies are hereby PRELIMINARILY APPROVED.  Final approval and entry of the Consent Decree is subject to the hearing of any objections of Class Members to the proposed settlement embodied in the Consent Decree.

2.      Pending the determination of the fairness of the Consent Decree, all further proceedings in this action are hereby STAYED.

3.      For purposes of settlement, the Court hereby DESIGNATES a Settlement Class consisting of two sub-classes, as follows:

(a)      The Salaried Sub-Class, certified pursuant to Fed. R. Civ. P. 23(b)(3), consists of all female non-executive, salaried current or former Boeing employees (excluding engineers represented by SPEEA) who worked at any of Boeing's facilities in the Puget Sound area of the State of Washington at any time between February 25, 1997 and July 16, 2004, *except* those persons who file a timely request to opt out of the provisions of the proposed Consent Decree pursuant to this Order, with respect to their claims for injunctive relief for promotion and compensation claims and monetary relief (including back pay) for compensation claims.

(b)      The Hourly Sub-Class, certified pursuant to Fed. R. Civ. P. 23(b)(3), consists of all female current or former hourly employees covered by a collective bargaining agreement between Boeing and IAM Local 751 who worked at any of Boeing's facilities in the Puget Sound area of the State of Washington at any time between February 25, 1997 and July 16, 2004, *except* those persons who file a timely request to opt out of the provisions of the proposed Consent Decree pursuant to this Order, with respect to their claims for injunctive relief for promotion and overtime claims and monetary relief (including back pay) for overtime claims.

4.      Should this Court or any reviewing court on direct appeal and/or on writ of certiorari to the Supreme Court of the United States from a direct appeal to the U.S. Court of Appeals for the Ninth Circuit refuse to approve this Consent Decree or require modifications to this Consent Decree other than those expressly permitted pursuant to the

language of the Decree, the Consent Decree shall be null and void, inadmissible and unusable in any future proceeding, and the Decree shall not be considered a binding settlement agreement, unless Plaintiffs and Boeing each expressly and voluntarily approve in writing any such modification by this Court or the reviewing court.

5.    Notice Procedures:

(a)    Within ten (10) days following the entry of this Order, Boeing shall provide to the Claims Administrator identified in the proposed Consent Decree a list of the individuals it understands to comprise the two Sub-Classes, along with their Social Security Numbers and the most current address known to Boeing for each such individual. Within twenty-one (21) days following the entry of this Order, the Claims Administrator shall begin distributing the "Notice of Proposed Class Action Settlement and Fairness Hearing" attached hereto as Exhibit "2," by first-class mailing to all individuals who are members of one or both of the Sub-Classes.

(b)    No later than sixty (60) days following the date of this Order, the Claims Administrator shall inform the Court of the details concerning the extent and completion of the Notice procedure.

(c)    The manner and form of Notice described above are hereby found to constitute the most effective and practicable notice under the circumstances of the pendency of the class action, the proposed settlement, and the fairness hearing to all class members, and constitutes due and sufficient notice to all persons entitled to receive notice required by due process and Rule 23 of the Federal Rules of Civil Procedure, and are hereby APPROVED by this Court.

(d)    Pursuant to the parties' agreement, all costs of the Notice process, including the costs of preparing, distributing and mailing the Notices as required by

Paragraph 5(a), shall be paid from the settlement fund established pursuant to the proposed Consent Decree.

  6.  The process for eligible members of the Settlement Class to submit and file claims forms shall occur following the Court's final approval of the Decree, if the Decree is so approved.

  7.  A hearing concerning the fairness of the proposed settlement embodied in the Decree (the "Fairness Hearing") shall be held at 9:00 a.m. P.D.T. on October 8, 2004, at the United States District Courthouse, 700 Steward Street, Seattle, Washington 98101, at which time the Court shall hear any properly filed objections to the Decree and consider whether the Consent Decree should be approved and entered by the Court.

  8.  Any member of either Sub-Class may object to the proposed Consent Decree by filing an objection and, if she so desires, appearing at the Fairness Hearing. To be considered by the Court, however, any objections to the final approval of the Consent Decree must be filed in writing with the Court on or before September 7, 2004 (the "Cutoff Date"). All such objections must clearly state the basis for the objection and must be timely filed in writing, along with all other papers or briefs the Class Member wishes the Court to consider, with the Office of the Clerk of the United States District Court, Western District of Washington, United States District Courthouse, 700 Stewart Street, Seattle, Washington 98101, with a true and correct copy thereof served upon Class Counsel and counsel for Boeing. If any attorney will be representing an individual objecting to the Consent Decree, the attorney shall file a notice of appearance with the Court and serve counsel for all parties with a true and correct copy thereof on or before the Cutoff Date. Any member of the Settlement Class who does not timely file and serve such a written objection shall not be permitted to raise such objection, except for good

cause shown, and any member of the Settlement Class who fails to object in the manner
prescribed herein shall be deemed to have waived, and shall be foreclosed from raising,
any such objection.

9.       Plaintiffs and Boeing shall serve on each other and file with the Court on
or before three (3) calendar days prior to the Fairness Hearing any further documents in
support of the proposed Consent Decree, including responses to any papers filed by
Settlement Class members.

10.      Consistent with Section III.D.1.b of the proposed Consent Decree, and in
accordance with the requirement of Federal Rule of Civil Procedure 23(b)(3), any
Settlement Class member may request exclusion from the Settlement Class.

(a)      Settlement Class members who wish to exclude themselves from the
settlement must do so in writing, by filing with the Court a signed and dated handwritten
"Request to Opt Out" statement. Requests to Opt Out shall be mailed to the Clerk of the
United States District Court for the Western District of Washington, United States District
Courthouse, 700 Stewart Street, Seattle, Washington 98101. Requests to Opt Out must be
received by the Clerk of the United States District Court on or before the Cut-Off Date of
September 7, 2004. All Request to Opt Out statements shall contain the following
language, in the Settlement Class member's own handwriting:

> "I am a Class Member in the lawsuit of *Beck, et al. v. The Boeing
> Co.*, Civil Action No. C00-0301P. I understand that in choosing to opt out
> of the Class and settlement in this case, I will not be entitled to any money
> under the settlement. I also understand that if I file a separate lawsuit or
> other legal proceeding:
>
> • I may lose my case and receive nothing;
>
> • It may take several years to obtain any money or other relief, if I
>   receive any relief at all;

- I may have to pay my own attorneys' fees and the costs of litigation;

- I may obtain less money than I can get under this settlement;

- I also understand that, if the Court approves the settlement, Class Members who do not opt out and who file timely Claim Forms may be eligible to receive a monetary payment under the settlement. I still choose to opt out and to be excluded from the settlement."

After hand-writing this statement, you must sign and date it.

(b)      Only those Settlement Class members who request exclusion in the time and manner set forth herein shall be excluded from the Settlement Class. Pursuant to Federal Rule of Civil Procedure 23(b)(3) and (c)(2), the terms and provisions of the Consent Decree shall have no binding effect on any person who makes a timely request for exclusion in the manner required by this Order.

(c)      In the event that more than a designated number of the members of the Settlement Class file timely Requests to Opt Out, Boeing may at its sole option void the proposed Consent Decree in its entirety. (This designated number has been filed separately with the Court, under seal.) In such event, Boeing must exercise its option to void the proposed Consent Decree no later than fifteen (15) days after the Cut-Off Date, by notifying Class Counsel and the Court of its decision to void the Consent Decree and the underlying settlement.

11.      The Court hereby APPOINTS Hunter R. Hughes, Esq., of Rogers & Hardin, 229 Peachtree Street, N.E., Suite 2700, Atlanta, GA, 30303, as Special Master for purposes of determining the validity of any disputed claims filed pursuant to the Consent Decree, as outlined in Section IV.B.2.d thereof.

DONE AND ORDERED, in Seattle, Washington this 16th day of July, 2004.

Honorable Marsha J. Pechman
United States District Judge

SO STIPULATED:

By: _____
Michael D. Helgren, WSBA No. 12186
McNAUL EBEL NAWROT HELGREN & VANCE,
PLLC
600 University Street
Suite 2700
Seattle, WA 98101-3143

By: _____
Joseph M. Sellers

By: _____
Christine E. Webber
Julie Goldsmith Reiser, WSBA 27485
COHEN, MILSTEIN, HAUSFELD
  & TOLL, P.L.L.C.
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005
(202) 408-4600

Counsel for Plaintiffs

By: _____
C. Geoffrey Weirich
Barbara B. Brown
Maureen E. O'Neill
PAUL, HASTINGS, JANOFSKY &
         WALKER, LLP
600 Peachtree Street., N.E.
Suite 2400
Atlanta, GA 30308

By: _____
Lawrence B. Hannah
Nancy Williams
James Sanders
PERKINS COIE, LLP
1201 Third Avenue
Suite 4800
Seattle, WA  98101

Counsel for Defendants

Hon. Marsha J. Pechman

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARY BECK, et al.,

                    Plaintiffs,

        v.

THE BOEING COMPANY, et al.,

                    Defendants.

No. C00-0301P

[PROPOSED] COURT-APPROVED
CONSENT DECREE

**Noted On Motion Calendar**

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P)

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

EXHIBIT 1

# I. INTRODUCTION

This is a class action brought by Plaintiffs Betsy Anderson, Patti Anderson, Mary Beck, Karla Coleman, Esther Estevez, Wendy Kelley, Aprill Linear, Fern Neatherlin, Terri Neuharth, Sheilah Sage, Ellie Schaff, and Shelley Sinclair (hereinafter collectively referred to as the "Named Plaintiffs") against The Boeing Company and two of its current and former subsidiaries, McDonnell Douglas Corporation and Boeing North American, Inc. The plaintiffs allege that Defendants engaged in a pattern or practice of discrimination on the basis of gender with respect to salaried compensation, hourly overtime and promotions in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("Title VII"), the federal Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"), the Washington Equal Pay Act, RCW 49.12.175 ("WEPA"), and the Washington Law Against Discrimination, RCW 49.60.180 ("WLAD").

Defendants expressly deny any wrongdoing or liability. This Consent Decree represents the compromise of disputed claims. It reflects the parties' recognition that litigation of these claims and defenses would severely burden all concerned and would require a further commitment of time, resources and money. As such, it represents neither an admission of liability by Defendants, nor an admission by Plaintiffs that Defendants are not liable.

In the interest of ensuring equality of employment opportunity and respect for civil rights, and avoiding the expense, delay, and inconvenience of further litigation of the issues raised in this action, and in reliance upon the representations, mutual promises,

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 1

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

covenants, and obligations set out in this Consent Decree, and for good and valuable consideration also set out in this Decree, the parties, through their undersigned counsel of record, hereby stipulate and agree as follows:

## II. LITIGATION BACKGROUND

On February 25, 2000, twenty-eight current or former female employees of Defendants filed suit against Boeing, alleging systemic gender discrimination. The action was brought under Title VII, the EPA, the WEPA and the WLAD. The complaint also stated various state law claims including negligent misrepresentation, fraud, detrimental reliance, promissory estoppel, breach of contract, negligent supervision, and violations of the Washington State Wage Law, RCW 49.52.

Plaintiffs sought injunctive and equitable relief, including back pay, as well as compensatory and punitive damages for themselves and the class, and a jury trial. Plaintiffs originally sought to represent a class of all current and former female employees of the Defendants, covering all their respective locations, organizations, and job classifications nationwide. The proposed class would have included over 55,000 salaried and hourly employees at over 80 facilities.

On March 13, 2000, the Complaint was amended to add ten additional named plaintiffs. Subsequently, on May 26, 2001, Plaintiffs filed a Second Amended Complaint, dropping their class claims for compensatory damages and eliminating their state law claims for negligent misrepresentation, fraud, detrimental reliance, and promissory estoppel. Plaintiffs alleged in the amended complaint that the Defendants denied their

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 2

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

female employees "job assignments, promotional opportunities, management positions, training, equal pay, overtime, tenure, comparable retention ratings, bonuses, and other benefits and conditions of employment" because of their gender.

The parties conducted extensive pre-certification discovery. Plaintiffs' Motion for Class Certification, filed on May 2, 2001 (and later corrected on May 18, 2001), sought certification of two multi-facility, multi-state classes. The first was to be comprised of all non-executive, non-SPEEA-engineer salaried female employees at Boeing's facilities in Puget Sound, Washington; Wichita, Kansas; St. Louis, Missouri; and Long Beach, California. The second would have included all female hourly employees covered by collective bargaining agreements with the International Association of Machinists and Aerospace Workers ("IAM") in Puget Sound, St. Louis, and Wichita. Plaintiffs sought (a) classwide injunctive relief for the compensation, promotion and overtime claims, and (b) back pay and punitive damages, but for the compensation and overtime claims only.

Plaintiffs argued that Defendants' various compensation, promotion, and overtime decision-making practices were tainted with "excessive" subjectivity and managerial discretion and that the absence of objective, empirically measurable standards worked systemically to the disadvantage of female employees. Further, Plaintiffs alleged that high-level Boeing executives had been made aware of statistical disparities in salaried compensation between men and women, but failed to take immediate action sufficient to eliminate entirely those statistical disparities.

In response, Defendants explained that common and typical issues did not exist across or within Plaintiffs' proposed classes because the compensation, promotion and overtime decisions being attacked were made at the local level by thousands of different

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 3

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

decisionmakers, using practices that varied significantly among locations, organizational

units, plants, and work groups.  Boeing categorically denied that it, or any of its operating

divisions or subsidiaries, had engaged in any policy or pattern or practice of unlawful

employment discrimination against any female employees as a group.  Further, Boeing

denied that its managers used "excessive" subjectivity or discretion and denied that

empirically measurable standards were lacking.  Boeing also denied that it failed to take

steps to address any alleged differences in compensation between men and women.  To

the contrary, Boeing explained that it had undertaken extensive proactive self-critical

measures in an attempt to understand the very complicated set of factors that influence

salaried compensation.

After requesting supplemental briefing on specific issues, the district court on

October 19, 2001 declined to certify Plaintiffs' proposed classes.  Instead, the Court

certified a more limited class comprised of two subclasses as follows:

> A class of women employed at defendants' facilities in the
> Puget Sound area of the State of Washington at any time
> since February 25, 1997 seeking punitive damages for
> gender discrimination in compensation and overtime and
> injunctive relief for gender discrimination in compensation
> and promotion.  The class will be broken into subclasses as
> follows:
>
> a. All non-executive salaried women
> employees (excluding SPEEA engineers) in
> defendants' facilities in the Puget Sound
> area of the State of Washington.
>
> b. All hourly women employees covered by
> collective bargaining agreements with the
> IAM union in defendants' facilities in the
> Puget Sound areas of the State of
> Washington.

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 4

LAW OFFICES OF
McNaul Ebel Nawrot Helgren
& Vance, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1   Subsequently, the claims of the putative class representatives from outside the Puget

2   Sound area of the State of Washington were severed by the Court and transferred

3   elsewhere.

4       After the Court issued its class certification decision and after the Ninth Circuit

5   completed its appellate review of that decision, the parties proceeded to conduct

6   exhaustive discovery on the merits of Plaintiffs' claims.  At the close of discovery each

7   party filed motions for partial summary judgment.  On April 9, 2004, the Court denied

8   both Plaintiffs' and Defendants' motions for partial summary judgment regarding the

9   disparate impact claims and partially granted Defendants' motion for partial summary

10  judgment regarding any claims falling outside the limitations periods established for the

11  Title VII and state law claims.  Defendants' motion for partial summary judgment

12  regarding Plaintiffs' post-March 1, 2001 salaried compensation claims and post-June 30,

13

14  2000 hourly and salaried promotion claims was denied.

15

16      As noted, the parties engaged in extensive discovery.  The parties have taken more

17  than sufficient discovery to assess the relative merits of the systemic claims of the

18  Plaintiffs and the putative class, and Boeing's defenses.  This has been a lengthy and often

19  contentious discovery process, through which a multitude of Gigabytes of electronic

20  information, as well as close to a million pages of paper documents, were exchanged.

21  This discovery process spanned many years, through thousands of hours of depositions,

22  hundreds of declarations, dozens of sets of discovery requests, motions to compel and

23  Special Master orders, a multitude of expert reports and testimony, and tens of thousands

24  of pages of statistical analyses.  Through this exhaustive process, the parties developed an

25

26

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1   acute understanding of the facts and a thorough understanding of the merits of each

2   other's case.

3       The Plaintiffs and Boeing have participated in mediated settlement negotiations

4
5   sporadically over several years, resuming with greater urgency during the weeks before

6   the trial was scheduled to begin.  These negotiations have been conducted at arms-length,

7   with the assistance of two experienced mediators.  These efforts resulted in an agreement

8   to settle this action prior to a lengthy and expensive trial, subject to this Court's review

9   and approval after notice, an opportunity for members of the Settlement Class to object to

10  or opt out of the settlement, and an evidentiary fairness hearing.  The terms of the parties'

11  agreement are contained in this Consent Decree.

12
13      The parties believe that this extensive discovery process was sufficient to assess

14  adequately the relative strengths and weaknesses of the respective parties' merits

15  positions, as well as the possibility that the class certification decision could be modified

16  after trial or on appeal, and to compromise the fundamental issues on a fair and equitable

17  basis.  Especially given that a settlement was reached at the eve of the commencement of

18  trial, the parties were fully versed prior to settlement in every element of the case,

19
20  including both the weaknesses and strengths of their respective positions.  As indicated by

21  the signature of Class Counsel and counsel for Boeing at the end of this document,

22  Plaintiffs and Boeing have consented to the entry of this Decree.

23

24

25

26

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 6

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467- 816

## III.    GENERAL PROVISIONS

### A.    DEFINITIONS

#### 1.    "Adverse Impact"

Adverse Impact means a substantially different rate of selection, as determined by prevailing federal fair employment law, which works to the disadvantage of female employees.  Adverse Impact shall be defined under this Decree as statistically significant at 1.96 or more standard deviations.  For purposes of analyzing compensation, adverse impact shall be measured annually, following the salary review period.  For purposes of analyzing overtime, adverse impact shall be measured quarterly.  For purposes of analyzing promotions, adverse impact shall be measured on an annual basis.

#### 2.    "Best Efforts"

Taking steps reasonably designed to achieve compliance with specified objectives to which the best efforts are directed.

#### 3.    "Boeing" and "Company"

For all purposes and terms of this Consent Decree other than Section V hereof, "Boeing" and "Company" shall mean The Boeing Company and all its subsidiaries, including but not limited to the McDonnell Douglas Corporation.  However, Section V hereof, involving Equitable Relief, shall apply only to The Boeing Company and the McDonnell Douglas Corporation, and more specifically shall apply only to the operations of those two corporations in the Puget Sound area of the State of Washington, with respect to employees who are neither (a) executives nor (b) engineers represented by the Society of Professional Engineering Employees in Aerospace ("SPEEA").

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 7

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

4.      **"Claims Administrator"**

The firm named Settlement Services, Inc. which Class Counsel has retained, as provided in Section IV of this Consent Decree, to assist in the administration of monetary awards to be made pursuant to this Consent Decree.

5.      **"Claims Process"**

The Claims Process, as set forth in Section IV.B.

6.      **"Class Claims"**

The claims certified by this Court for class treatment on October 19, 2001, and subsequently modified on December 27, 2001, including claims for punitive damages for alleged gender discrimination in compensation and overtime and for injunctive relief for alleged gender discrimination in compensation, promotion, and overtime.

7.      **"Preserved Claims"**

The claims for back pay damages for alleged discrimination in compensation and overtime on behalf of putative and actual class members, which were preserved by the Court's December 27, 2001 Order.

8.      **"Class Complaint"**

The class complaint of discrimination that plaintiffs filed in this action on February 25, 2000 in the United States District Court for the Western District of Washington on behalf of the Plaintiff Class, as amended by the Second Amended Complaint filed on May 26, 2001.

9.      **"Class Counsel"**

All counsel of record who are signatories to this Consent Decree on behalf of the Class. They are as follows: McNaul Ebel Nawrot Helgren & Vance, P.L.L.C., 600

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 8

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

University Street, Suite 2200, Seattle, Washington, 98101, and Cohen, Milstein, Hausfeld & Toll, P.L.L.C., 1100 New York Avenue, N.W., Suite 500, West Tower, Washington, D.C.  20005.

 10.   "Class Member(s)," "Class," and/or "Plaintiff Class"

 The Class certified by this Court on October 19, 2001, which is defined as women employed at Boeing's facilities in the Puget Sound area of the State of Washington at any time since February 25, 1997, seeking punitive damages for gender discrimination in compensation and overtime and injunctive relief for gender discrimination in compensation, promotion, and overtime." The Court divided the class into two subclasses as follows:

> a. The Salaried Sub-Class: "all non-executive, salaried women employees (excluding SPEEA engineers) in defendants' facilities in the Puget Sound area of the State of Washington."

> b. The Hourly Sub-Class:  "all hourly women employees covered by the collective bargaining agreements with the IAM union in defendants' facilities in the Puget Sound area of the State of Washington."

 11.   "Class Representatives"

 Betsy Anderson, Patti Anderson, Mary Beck, Karla Coleman, Esther Estevez, Wendy Kelley, Aprill Linear, Fern Neatherlin, Terri Neuharth, Sheilah Sage, Ellie Schaff, and Shelley Sinclair.

 12.   "Consent Decree" or "Decree"

 This document, which as proposed to the Court is entitled "Court-Approved Consent Decree," and which has been signed by counsel of record for the parties, subject

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 9

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

to approval and adoption by the Court, and which contains the following attached

exhibits:

      a.     Notice of Proposed Class Action Settlement and Fairness Hearing

      b.     Proposed Claim Form

      c.     Proposed Release to be Executed by Named Plaintiffs

13.    "Court" or "District Court"

The United States District Court for the Western District of Washington (Seattle

Division).

14.    "Decree Year"

Decree Year means the one-year period from the Effective Date or the anniversary

of the Effective Date until the next anniversary of the Effective Date.  For example,

"Decree Year One" would be the one-year period from the Effective Date until the first

anniversary of the Effective Date.

15.    "Effective Date"

The date on which the time for filing an appeal from the Court's grant of Final

Approval has expired, or, if later, after any appeal has been finally resolved (including full

resolution of any appellate review, requests for rehearing, rehearing *en banc*, and petitions

for writs of *certiorari*), at which time the parties become bound to perform the obligations

set out in this Consent Decree, and the Consent Decree's terms become binding on

Boeing, the Class, and each of the Class Members who has not opted out of the Class.

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

16. **"Final Approval"**

The entry of the Court's Order granting approval of this Consent Decree as fair, reasonable and adequate to the class as a whole.

17. **"Gender Discrimination" or "Discriminating on the Basis of Gender"**

Discrimination on the basis of gender means unlawful discrimination against employees on the basis of their sex or gender.

18. **"Liability Period"**

The Liability Period is the period between February 25, 1997 and the date of Preliminary Approval.

19. **"Preliminary Approval"**

The entry of the Court's Order granting preliminary approval of this Consent Decree, which reflects that the Court concludes that the terms of this Decree appear sufficiently fair, reasonable and adequate to the Class as a whole to warrant notice to the Class, an opportunity for Class Members to object or opt out, and a fairness hearing to consider final approval of the Decree.

20. **"This Case"**

Refers to all proceedings relating to or arising from the Class Complaint.

21. **"Term of the Consent Decree"**

The period from the Effective Date until the expiration of the Decree pursuant to Section III.C.2 of the Decree.

**B. JURISDICTION OF THE COURT**

The Court has jurisdiction over the parties and the subject matter of this action. The Class Complaint asserts claims that, if proven, would authorize the Court to grant the

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 11

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1  monetary and equitable relief set forth in this Decree, if the Court's class certification

2  Order was modified to include Plaintiffs' request for back pay.  Venue is proper in the

3  Western District of Washington.  This Court shall retain jurisdiction of this action during

4  the Term of the Consent Decree for the purpose of entering any orders, judgments or

5  decrees which may be necessary to implement the relief provided herein.  This Decree is

6  not intended to confer jurisdiction in any court or administrative forum other than the

7

8  District Court where the Complaint was filed.

9  **C.   EFFECTIVE DATE AND DURATION OF THE DECREE**

10       **1.   Effective Upon Final Approval and Exhaustion of Appellate Rights**

11            Unless provided otherwise, the equitable provisions in this Decree are effective

12  immediately upon the Effective Date.

13

14       **2.   Expiration of the Decree**

15            Unless extended pursuant to Section III.C.3 hereof, the provisions of this Decree

16  shall remain in effect for sixty (60) days after three (3) salary review periods have been

17  completed during which the Equitable Relief provisions described in Section V.C of the

18  Decree have been implemented, or until May 31, 2007, whichever is later.  In the event

19  that the Effective Date occurs later than January 1, 2005, one or more of the

20  aforementioned salary review periods during which the Equitable Relief provisions

21  described in Section V.C have been implemented may precede the Effective Date.

22

23       **3.   Extension to the Decree**

24            No extension of this Consent Decree shall be granted unless Class Counsel

25  demonstrate that, during the final year of the Consent Decree, Boeing has materially

26  violated the Decree and such violations are unremedied.  In such event, only those terms

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 12

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

of the Consent Decree as to which there has been an unremedied material violation during the final Decree Year shall be subject to extension by the Court, for such appropriate additional period as may be necessary to secure compliance.

## D.  SCOPE OF THE CONSENT DECREE

### 1.  Persons Covered

#### a.  Certified Class

Pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), this Court certified the following Class:

Women employed at defendants' facilities in the Puget Sound area of the State of Washington at any time since February 25, 1997, seeking punitive damages for gender discrimination in compensation and overtime and injunctive relief for gender discrimination in compensation, promotion, and overtime.  The Court certified two sub-classes as follows:

a.    All non-executive, salaried women employees (excluding SPEEA engineers) in defendants' facilities in the Puget Sound area of the State of Washington.

b.    All hourly women employees covered by the collective bargaining agreements with the IAM union in Defendants' facilities in the Puget Sound area of the State of Washington.

For settlement purposes only, the parties jointly stipulate that this certification may be amended to include Plaintiffs' request for back pay.

#### b.  Opt-Out Rights

If this Consent Decree is approved by the Court, all persons within the Class are bound by its terms, except those Class Members who effectively exercise a right to opt out

[PROPOSED] COURT-APPROVED CONSENT DECREE (No. C00-0301P) – Page 13

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

of the Class and the settlement. Class Members who elect to opt out must do so in writing, in the manner and by the date specified in the Notice of Proposed Class Action Settlement and Fairness Hearing, attached as Exhibit A.

If the number of Class Members who opt out of the Class in the manner provided in the Notice of Proposed Class Action Settlement and Fairness Hearing exceeds the number filed with the Court under seal concurrently with this Consent Decree (Sealed Exhibit D), then Boeing, at its option, shall have the right to void this settlement within fifteen (15) days after the date by which the Court requires Class Members to return their opt-out notices. With respect to the claims percentages ranges set forth in Section IV.A.1, a class member who has opted out of the settlement nevertheless shall be counted in the denominator of said calculations.

2.     **Release/Bar of Claims**

a.     **Release**

i.     In consideration of the promises contained in, and the benefits provided or to be provided hereunder, upon the Effective Date this Consent Decree shall resolve, extinguish, and finally and forever bar any and all claims in law or in equity which any of the Class Representatives, or their respective representatives, agents, heirs, executors, administrators, successors, or assigns have, may have, may have had, or in the future may have against Boeing arising from or related to events that occurred during the Liability Period. Prior to receiving any monetary relief under this Decree, each Class Representative will be required to execute a full and

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 14

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

final general release of all claims against Boeing, whether or not

asserted in This Case, in the form attached as Exhibit C.

ii.     Except with respect to any persons who have effectively

exercised a right to opt out of this Decree, in consideration of the promises contained in,

and the benefits provided or to be provided to the Class Members hereunder, upon the

Effective Date this Consent Decree shall resolve, extinguish, and finally and forever bar

any and all Claims in law or in equity for monetary relief or for equitable relief for alleged

gender discrimination in regard to compensation or IAM hourly overtime, and, with

respect to alleged gender discrimination in regard to promotion, for all claims for

equitable relief (not including back pay), which any of the Class members, or their

representatives, agents, heirs, executors, administrators, successors, or assigns have, may

have, may have had, or in the future may have against Boeing arising from or related to

events that occurred during the Liability Period which are in alleged violation of Title VII,

the EPA, the WEPA and/or the WLAD.  As used in this Section III.D.2.a.ii, the phrase

"claims for monetary relief" shall include all claims for economic or non-economic

monetary damages of any kind, including, without limitation, claims for back pay,

employment benefits (including, without limitation, retirement, life insurance, and 401(k)

savings plan benefits, and the monetary equivalent of various forms of leave), and/or

interest (including both pre-judgment interest and post-judgment interest), compensatory

damages and punitive damages.

3.     Upon the Effective Date, the doctrines of *res judicata* and collateral

estoppel shall bind all Class Representatives and other Class Members (except those who

have effectively opted out under the provisions of this Consent Decree) with respect to all

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 15

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

claims identified in Section III.D.2.a.ii, above.  This Consent Decree may be pled as a full and complete defense to any subsequent action or other proceeding involving any person or party which arises out of the claims released and discharged by this Decree.

   **b.  No Bar to Certain Claims**

   Nothing in the Decree shall be construed to bar (i) any claims of Class Representatives or other Class Members that arise after the Liability Period, or (ii) any entitlement to, or benefits from, programs administered by any governmental agency/authority, or provided directly by Boeing, due to the individual being no longer employed by Boeing, or being partially or wholly disabled from work, such as but not limited to unemployment or disability benefits from any state or federal agency.

**E.  NO ADMISSION OF LIABILITY**

   Boeing expressly denies any wrongdoing or liability.  This Consent Decree represents the compromise of disputed claims.  It reflects the parties' recognition that litigation of these claims would severely burden all concerned and would require a further commitment of time, resources and money.  The Consent Decree does not constitute, is not intended to constitute, and shall not under any circumstances be deemed to constitute, an admission by either party as to the merits, validity, or accuracy, or lack thereof, of any of the allegations, claims, or defenses alleged in This Case.

**F.  INTERPRETATION OF CONSENT DECREE**

   **1.  Nature of Agreement**

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 16

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

This Consent Decree is a contract and shall, upon final approval by the Court, also constitute an order of the Court, and all of its provisions shall be enforceable by the parties as an order of the Court.

### 2.   Calculation of Time

In computing any period of time prescribed or allowed by this Decree, unless otherwise stated, such computation or calculation shall be made consistent with Federal Rules of Civil Procedure 6(a) and 6(e).

### 3.   No Modification of Title VII or Washington Law Against Discrimination Requirements

Nothing in this Decree may be taken as modifying either the statutory or regulatory procedures pertaining to initiating and maintaining administrative and judicial proceedings under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e-16 *et seq.*, or the Washington Law Against Discrimination, or the requirement to exhaust administrative remedies prior to initiating suit under those statutes.

## G.   APPLICATION OF THIS DECREE TO BARGAINING UNIT MEMBERS

The provisions of this Decree shall apply to bargaining unit members to the fullest extent permitted by law and under applicable collective bargaining agreements.

## IV.  MONETARY RELIEF

## A.   BOEING PAYMENT TO THE CLASS

### 1.   The Total Fund

a.    Boeing shall pay to the Class the total payment specified in this Section IV.A.1 (plus interest, as specified in Section IV.A.3, below) in full, complete, and final satisfaction of all claims released pursuant to Section III.D.2.a.ii.  As indicated in the

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

matrices set forth in this Section IV.A.1, the amount of the total payment to the Class by Boeing shall depend upon the percent of Class Members in each of the two sub-classes who execute and submit a timely claim for monetary relief under this Decree. The denominator in these calculations shall be the total number of individuals who meet the definition of the Class (and the respective Sub-Class) set forth in Section III.A.10, as reflected in Boeing's Enterprise People Data Warehouse. This total payment, comprised of the Salaried Class Fund plus the Hourly Overtime Class Fund, shall be denominated the "Total Fund." Except solely insofar as this amount is augmented by imputed interest pursuant to Section IV.A.3, or with respect to any attorneys' fees and expenses that may be awarded by the Court pursuant to Section VII.C, the Total Fund shall constitute the entirety of Boeing's monetary obligations under this Decree.

### b.    Salaried Class Fund

| | |
|---|---|
| If Claims Return Rate is ≤ 15% | The Amount is  $31.6 million |
| If Claims Return Rate is > 15%  but ≤ 21% | The Amount is  $35.8 million |
| If Claims Return Rate is > 21%  but ≤ 24% | The Amount is  $37.3 million |
| If Claims Return Rate is > 24%  but ≤ 28% | The Amount is  $40.4 million |
| If Claims Return Rate is > 28%  but ≤ 35% | The Amount is  $43.6 million |
| If Claims Return Rate is > 35%  but ≤ 38% | The Amount is  $46.7 million |
| If Claims Return Rate is > 38%  but ≤ 45% | The Amount is  $50.9 million |
| If Claims Return Rate is > 45%  but ≤ 53% | The Amount is  $53.7 million |
| If Claims Return Rate is > 53% | The Amount is  $56.4 million |

### c.    Hourly Overtime Class Fund

| | |
|---|---|
| If Claims Return Rate is ≤ 15% | The Amount is   $9.0 million |
| If Claims Return Rate is > 15%  but ≤ 21% | The Amount is $10.2 million |
| If Claims Return Rate is > 21%  but ≤ 24% | The Amount is $10.7 million |
| If Claims Return Rate is > 24%  but ≤ 28% | The Amount is $11.6 million |
| If Claims Return Rate is > 28%  but ≤ 35% | The Amount is $12.4 million |
| If Claims Return Rate is > 35%  but ≤ 38% | The Amount is $13.3 million |
| If Claims Return Rate is > 38%  but ≤ 45% | The Amount is $14.5 million |
| If Claims Return Rate is > 45%  but ≤ 53% | The Amount is $15.3 million |
| If Claims Return Rate is > 53% | The Amount is $16.1 million |

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

2.    **Distribution of the Total Fund**

From the Total Fund first shall be paid the amounts approved by the Court pursuant to Section VIII, covering (a) Class Counsel's litigation costs and expenses, and (b) Class Counsel's attorneys' fees incurred in litigating This Case, and pursuant to Section IV.C, covering payments to the Named Plaintiffs and Class Witnesses.    These amounts shall be deducted from the Salaried Class Fund and the Hourly Overtime Class Fund in direct proportion to their relative size.

3.    **Interest on Total Fund Amounts**

Boeing shall add to the Total Fund an amount of imputed interest accrued at an annual rate of 2% of the amount in the Total Fund which has not yet been distributed (including such amounts as ultimately are awarded as attorneys' fees and costs), as determined hereby.  Interest at such 2% annual rate shall begin to accrue sixty (60) days after the date of the District Court's decision granting Final Approval of the settlement, and will continue to accrue until the checks payable to at least 80% of the award recipients are disbursed to the Claims Administrator for delivery to the Class Members pursuant to Section IV.B.2.f and Section IV.D.  At that time, Boeing shall provide a check to the Claims Administrator for the entire amount of the imputed interest ("the Interest Fund"), and Boeing shall have no obligation to pay any further interest on any amounts that may remain in the Total Fund.  The Claims Administrator shall serve as a trustee of the Interest Fund, and shall make disbursements from the Interest Fund according to the directions of Class Counsel.  Class Counsel shall be entitled to apply such interest payment amounts to: first, expenses of administration, notices and other costs associated with implementing this

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 19

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

settlement; the attorneys' fees and costs generated in monitoring Boeing's compliance with this Decree; and litigation costs in excess of $3 million; and, second, once the foregoing amounts are fully paid, on a proportionate basis to the payments to Class Counsel and to those Class Members entitled to payments. That is, if the total payments to the Class equal "X," and the Court approved payment to Class Counsel for attorneys' fees and expenses pursuant to Sections VIII.A and B equals "Y," then the portion of the residual interest sums due the Class equals X divided by (X+Y) times the available residual interest, and Class Counsel shall receive an amount equal to Y divided by (X+Y) times the available residual interest.

**B.    CALCULATION OF MONETARY AWARDS TO CLASS MEMBERS AND SCHEDULE**

**1.    Basic Eligibility for Payments from the Funds**

Class Members may receive a payment from the funds under the following circumstances:

    a.    To qualify for any payment from the funds, an individual must:

        i.    Return a completed Claim Form postmarked no later than the date established under this Decree for submitting claims.

        ii.    State that one or both of the following is true:

            (a).    Based on the information available to me, I believe I may have been paid unfairly because I am a woman; and/or,

            (b).    I believe I have received less overtime than males because I am a woman.

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 20

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467- 816

**b.** Claims filed on behalf of deceased class members must be accompanied by a certified copy of the deceased class member's death certificate and must be filed by an administrator or other authorized representative of the Estate.

**c.** Calculation of Individual Awards from the Salaried Fund.

**(i).** The Salaried Class Fund will be split into pools for each time period and category of employee, as set forth below.

### February 25, 1997 – March 1998

| | |
|---|---|
| Management | 7.61% |
| SPEEA Tech | 6.05% |
| Non-Exempt and Exempt Employees | 15.85% |

### April 1998 – March 1999

| | |
|---|---|
| Management | 3.16% |
| SPEEA Tech | 3.42% |
| Non-Exempt and Exempt Employees | 27.28% |

### April 1999 – March 2000

| | |
|---|---|
| Management | 2.4% |
| SPEEA Tech | 2.87% |
| Non-Exempt and Exempt Employees | 15.98% |

### April 2000 – March 2001

| | |
|---|---|
| Management | .96% |
| SPEEA Tech | 4.18% |
| Non-Exempt and Exempt Employees | 3.3% |

### April 2001 – March 2002

| | |
|---|---|
| Management | .17% |
| SPEEA Tech | 3.61% |

### April 2002 – Date of Preliminary Approval

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 21

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

| | |
|---|---|
| Management | .47% |
| SPEEA Tech | 2.89% |

(ii).   The specific monetary award that will be paid to qualified salaried claimants who file timely claims in the manner described above will be determined by crediting to that claimant one point for each full or partial month worked in one or more salaried non-intern positions in each time period and category of employment, among the pool categories described above.

d.   Calculation of Individual Awards from the Hourly Fund.

(i)   The Hourly Overtime Fund will be split into pools for each time period, as set forth below.

### February 25, 1997 – December 31, 1997

30.68%

### January 1, 1998 – December 31, 1998

30.44%

### January 1, 1999 – December 31, 1999

13.12%

### January 1, 2000 – December 31, 2000

9.45%

### January 1, 2001 – December 31, 2001

8.99%

### January 1, 2002 – Date of Preliminary Approval

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 22

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

7.32%

(ii).    The specific monetary award that will be paid to each qualified hourly claimant who files a timely claim will be determined by crediting to that claimant one point for each full or partial month worked in one or more hourly positions in each time period.

c.    Each qualified claimant's share of the respective funds (Hourly Overtime and Salaried) will be determined once all valid claims have been received. All of the points within each pool will be added up and each Class Member will receive a share of the pool in proportion to her share of the total points for that pool.

f.    Each Class Member who has not opted out and has timely submitted a valid Claim Form pursuant to the procedure set forth above shall receive the amounts calculated according to the distribution formula set forth above. Notwithstanding the results of these calculations, however, each such Class Member shall receive not less than $500.

g.    All decisions concerning monetary awards to Class Members from the Hourly Overtime Fund and Salaried Fund are to be determined solely by the model specified above, subject to the provisions of this Consent Decree. The Claims Administrator shall identify the Class Members to receive monetary relief, pursuant to the distribution formula described above, subject to approval of the Court. Calculation of the amounts due each Class Member shall be performed by Boeing using its electronic information concerning each Class Member's date(s) of employment. Boeing's calculation of these amounts, as confirmed by the Claims Administrator, shall be final.

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 23

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**2.     Schedule of Distributing Payments**

        a.     Within sixty (60) days after the Effective Date of the Consent
Decree, the Claims Administrator shall issue claim forms, by first class mail postage
prepaid, to all members of the class.  A copy of the Claim Form is attached to this Decree
as Exhibit B.  The Claims Administrator shall use Best Efforts to deliver the Claim Form
to all Class Members, including using available electronic search methodologies to re-
mail claim forms to any Class Member whose initial mailing is returned as undeliverable.
Class Counsel shall have the exclusive responsibility to determine whether the efforts of
the Claims Administrator in this regard constitute "Best Efforts."

        b.     Class Members shall have one hundred twenty (120) days from the
earliest date on which the Claims Administrator issues the claim forms within which to
return their claim forms to the Claims Administrator.  Claim forms postmarked within one
hundred twenty (120) days from the date on which the claim form issuance commences
shall be deemed timely.

        c.     Thereafter, the Claims Administrator shall have thirty (30) days
within which to perfect any defects in the claim forms (*e.g.* where there is no signature or
incomplete information on the claim form).  Subsequently, the Claims Administrator shall
have thirty (30) days in which to compile a list of the claimants from whom it received
timely claim forms and to transmit copies of the list of claimants to counsel for the
parties.

        d.     Counsel for each side shall have thirty (30) days from receipt of the
list of timely and eligible claimants from the Claims Administrator within which to
determine whether they contest the eligibility of any claimant whom the Claims

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 24

LAW OFFICES OF
McNAUL, EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Administrator has identified on the list of claimants, and to give notice in writing to the other counsel of the identity of any claimants whose right to participate in the monetary relief is being challenged and the grounds for such challenge. Counsel for the parties will then confer in a good faith attempt to resolve any disputes that may arise over the eligibility of particular claimants to participate in the monetary relief under the Decree. In the event such efforts do not resolve the concerns within forty (40) days from receipt of the list of timely and eligible claimants from the Claims Administrator, then the counsel who has contested the eligibility shall transmit to Hunter Hughes, Esq. the identities of the claimants whose eligibility to participate in the monetary relief is contested, along with grounds asserted for the contest of each claim. Within thirty (30) days of receipt of this information, Mr. Hughes shall rule on whether each contested claimant is allowed to participate in monetary relief, after soliciting any needed information from counsel for the parties. Mr. Hughes shall be appointed by the Court as a Special Master for the purpose of making these rulings, which will be final and not subject to further review.

    e.    At the close of the period within which rulings on contested claims have been made or within which the parties were permitted to contest the eligibility of any claimant to participate in the monetary relief, whichever is longer, Class Counsel will transmit the final list of claimants eligible to participate in the monetary relief to Boeing. Boeing shall have 60 days from receipt of this information within which to compute the amounts payable to each class member, in conformity with the distribution formula set forth in Section IV.B.1.c or IV.B.1.d. At the conclusion of this period, Boeing shall transmit its calculations of the gross amounts to be allocated to each Class Member to Class Counsel and to the Claims Administrator.

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 25

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467- 816

f.      Claims Counsel will submit to the Court under seal, within thirty (30) days of receipt of this information from Boeing, a report describing the claims process, the responses received, and the gross amount due each such Class Member hereunder.  Boeing shall, no later than sixty (60) days after the report is received, deliver to Settlement Services, Inc. checks made out to each recipient of monetary relief, in the appropriate net amounts as described below.

C.     **CALCULATION OF SERVICE PAYMENTS TO NAMED PLAINTIFFS AND CLASS WITNESSES**

1.      Each of the Named Plaintiffs will apply to the Court for an award of $100,000 for the services she has provided to the Class, and the risks she has taken on behalf of the Class, which will satisfy fully all claims she has brought or may have brought against Boeing up to and including the date of Preliminary Approval, and compensates her for those services and risks she has undertaken during this litigation, as detailed in Section IV.C.2, below.

2.      The parties have valued the services provided and risks undertaken by each of the twelve Named Plaintiffs in the following manner, subject to the Court's approval:

(a)     Service by each of the Named Plaintiffs on the case litigation steering committee in which they gave direction to, and regularly consulted with, Class Counsel about case strategy and direction and later about trial plans and settlement terms, valued at $15,000 each;

(b)     Assistance by each of the Named Plaintiffs in designing and undertaking discovery and responding to discovery undertaken by Boeing, as well as

[PROPOSED] COURT-APPROVED CONSENT DECREE (No. C00-0301P) – Page 26

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

submitting to one or more depositions and providing one or more declarations, valued at $25,000 each;

   (c) Assumption by each of the Named Plaintiffs of the risk that awardable litigation and other costs might be assessed against them, and the loss of wages during time taken from work in order to participate in this litigation, valued at $20,000 each; and

   (d) Execution by each of the Named Plaintiffs of a release of all claims they have or may have had against Boeing, which is broader than the release applicable to other Class Members, and future services by each of them in conferring with Class Counsel in monitoring this Consent Decree, valued at $40,000 each.

  3. The award that each Named Plaintiff receives shall be in lieu of any award which the Named Plaintiff otherwise could seek from the Hourly Overtime Fund and/or the Salaried Fund.  The payments awarded to the Named Plaintiffs shall be subject to approval by the Court, and any modification or reduction of any award sought by a Named Plaintiff shall not affect the validity of the other terms of this Decree.

  4. Subject to the Court's approval, there are an additional 22 members of the certified class, other than the Named Plaintiffs, who are eligible to seek an award in compensation for services rendered to the class through their submission to a deposition, provision of a declaration and/or the supply of information used in responding to discovery undertaken by Boeing, subject to the Court's approval.  The parties agree that such awards may be up to but shall not exceed $20,000 for any of these individuals.  The Class Representatives will ask that each of these 22 individuals receive $20,000 for her service to the Class.  The receipt of such an award will not preclude the Class Member

[PROPOSED] COURT-APPROVED CONSENT DECREE (No. C00-0301P) – Page 27

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

from receiving an award from the Salaried Fund and/or Hourly Fund.  Any payments awarded to these Class Members who rendered assistance to the class shall be subject to approval by the Court, and any modification or reduction of any award sought by such a Class Member shall not affect the validity of the other terms of this Decree.

**D.      DISTRIBUTION OF MONETARY AWARDS TO CLASS MEMBERS**

1.      Except solely with respect to calculation of the gross and net amounts due each Class member, and the preparation of checks for the net amounts, which shall be conducted by Boeing, the administration and distribution of monetary awards shall be handled by the Claims Administrator, whose duties will include:  (1) locating Class Members who are no longer employed by Boeing; (2) issuing notice to Class Members describing this Consent Decree and the right to object or opt out of the settlement; (3) distributing claim forms to, and receiving executed originals of same from Class Members;  (4) answering procedural questions from Class Members about the claims process under this Consent Decree through the use of a toll-free number; (5) creating a database of Class Members who have filed timely and valid claims; and (6) providing web-based responses to frequently asked questions.

2.      Boeing shall provide to the Claims Administrator, for delivery to the Class Members, checks for the net amount of the payment due that individual under the Decree, and a notice of the amounts withheld from that gross award for payroll taxes and withholding.  Further, Boeing will prepare and distribute W-2 and/or 1099-MISC tax forms (or any other applicable tax forms) to Class Representatives and Class Members prior to the subsequent tax-filing deadline for individual income taxes.

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 28

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

3.     If a Class Member who is eligible to receive monetary relief under this Consent Decree is deceased at the time of such distribution hereunder, the Claims Administrator may direct that the amount payable to such deceased Class Member shall be paid to the appropriate representative of her estate.  If the Claims Administrator determines that there is insufficient information or proof regarding the deceased person's estate to permit such payment, the deceased person's share shall become part of a *cy pres* fund containing any amounts remaining after all other disbursements called for under this Decree have been made.  Similarly, if a Class Member fails to cash an award check within one hundred twenty (120) days following the date of the check, then the amount of the check shall become part of the *cy pres* fund.  Within 180 days following the delivery of each set of checks to the Claims Administrator, Boeing will notify the Claims Administrator of any checks not cashed within the aforementioned 120-day period.  Once all disbursements called for under this Decree have been made, and all that remains are the *cy pres* funds, then a check for that amount shall be delivered by Boeing to the Northwest Women's Law Center, which is a § 501(c)(3) organization.

E.     **TAX WITHHOLDING FROM MONETARY RELIEF**

Any required employee deductions for federal, state, and local taxes, employee retirement account contributions, Medicare taxes and any other routine payroll deduction required by law, as determined by Boeing, shall be deducted from any amounts paid to Class Members from the Hourly Overtime Fund and Salaried Fund .  In calculating the amounts to be paid each qualified claimant, Boeing shall identify the net amount to be paid to the claimant after all the relevant employee deductions.  Neither the Class Counsel

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

nor the Claims Administrator shall be responsible for calculating the applicable taxes or withholding any appropriate deductions or reporting to the government any amount so withheld.

## V.   EQUITABLE RELIEF PROVISIONS

### A.   JOB ANALYSIS ISSUES

1.      Boeing agrees that maintaining equitable salary relationships is facilitated by having a system of accurate and current job descriptions.

2.      Boeing completed the Salaried Job Classification ("SJC") system for non-union positions in 1999, and for the SPEEA Technical positions in 2001, and has periodically updated the descriptions of the SJC jobs thereafter, on an ad hoc basis.

3.      During the term of the Decree Boeing will conduct a thorough review of the job descriptions of the non-union SJC positions, and revise them if necessary, to ensure that the job descriptions adequately identify the critical knowledge, skills, abilities and other characteristics ("KSAOs") for each job family, and for each level within each job family.  Boeing will complete the identification of KSAOs for not less than 30% of the job family/level combinations during the first year following the Final Approval Date, and for not less than 60% of the job family/level combinations during the second year following the Final Approval Date

### B.   PERFORMANCE EVALUATION ISSUES

1.      During the life of the Decree, Boeing will conduct an annual Performance Evaluation ("PE") exercise with respect to its non-union SJC and SPEEA Technical

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 30

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

populations. In the course of this exercise, each employee's direct supervisor will evaluate the employee's performance during the assessment year, for the purpose of providing constructive feedback and guidance to the employee, and for documenting, inter alia, the extent to which the employee has during the assessment year achieved his/her goals and objectives and demonstrated the Performance Values.

2.      Boeing's guidelines for completing the PE exercise will state that supervisors are expected to identify specific examples of performance behaviors to support high or low ratings in any category. Boeing will determine and provide training to supervisors delineating what level of rating falls within this requirement, and on how best to document and record such consequential performance behaviors.

3.      Each non-union SJC or SPEEA Technical employee shall be provided an electronic or written copy of his/her completed PE form. Boeing shall retain an electronic or written copy of each such employee's completed PE form for the life of the Decree, but not less than two years. In the event that during the life of the Decree Boeing modifies its PE form so that each such employee receives an overall rating that can be associated with a discrete numerical or letter score, then Boeing shall retain those ratings in a centralized electronic database.

4.      Boeing will monitor the extent to which PE forms are completed on non-union SJC and SPEEA Technical employees each year during the life of the Decree. It shall be Boeing's objective to achieve a 100% completion rate each year with respect to all such employees who have been employed at least six months at the time of PE close-out.

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1316

a.    In addition to those employed less than six months at the time of PE closeout, Boeing shall retain the right to identify other narrow categories of employees who shall be exempted from the mandatory PE requirement because the circumstances of such individuals' employment during the evaluation year undercuts the value of conducting such an evaluation. These additional categories of exempted employees shall under no circumstances comprise in total more than 5% of the total population of Puget Sound non-union salaried and SPEEA Technical employees who have been employed at least six months at the time of PE closeout. By way of example, the parties contemplate that one such exempted category may be those employees on leave of absence at least six months during the assessment year.

b.    Notwithstanding the full-completion objective, Boeing shall not be deemed out of compliance with this provision of the Decree as long as it achieves at least a 90% PE completion rate each year among those Puget Sound non-union SJC and SPEEA Technical employees who are not exempted from the mandatory PE requirement.

5.    Failure of a manager to complete PE forms on all his/her employees who are not exempted from the mandatory PE requirement shall be a factor considered in the assessment of that manager's performance, for both PE and salary review purposes.

## C.    SALARY REVIEW ISSUES

1.    During the life of the Decree Boeing will conduct an annual assessment of each employee's performance, and the value of his/her contribution, for the purpose of salary review (the "Assessment"). The Assessment will be conducted pursuant to the system then in place for incorporating said assessment into the salary review process.

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 32

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Boeing will inform employees in advance of the standards on the basis of which the Assessment will be conducted. The Assessment will be documented and shared with the employee as part of the salary increase advisement process; if the Assessment consists of more than just an alpha-numeric rating, then the employee will be provided a copy of the full document. As Boeing completes its review and determination of each job's critical KSAOs, as described in Section V.A.3, above, it will make this information available to managers at the time they conduct the Assessment, so that the manager can relate to these KSAOs their comments regarding the value of the employee's contributions.

2.      During the life of the Decree Boeing will establish for each employee a numerical or letter rating associated with the Assessment. Under the system currently in use for most Puget Sound jobs covered by the Decree, this rating is known as the Value Index ("VIN"), which identifies by the letters "A" through "G" the band assigned in the salary review process to rate the value of each employee's contribution. Boeing will develop and implement descriptions applicable to each such alpha-numeric Assessment rating. Boeing will provide to any manager who participates in developing an employee's Assessment rating a written or electronic copy of the employee's completed PE form for the immediately preceding performance evaluation cycle. If, during the life of the Decree, Boeing modifies its PE form so that each employee receives an overall rating that can be associated with a discrete numerical or letter score, then Boeing, at its option, may use the PE as the foundation for the Assessment.

3.      Boeing will conduct an annual disparate impact analysis identifying the extent to which the assignment of Assessment ratings results in any adverse impact on women within appropriate analysis groups. An analysis by Level within JAG within AAP

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 33

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

site will be deemed presumptively appropriate, as long as each analysis group has no fewer than thirty (30) employees. To the extent that a statistically significant adverse impact is identified within a group, Boeing will investigate further to determine whether there is a legitimate business-related justification for such impact. If it is determined that there is no legitimate business justification for the apparent adverse impact, Boeing will counsel the responsible managers regarding salary equity issues, and will take appropriate remedial action, which will include, if warranted, supplemental salary adjustments for affected employees.

4.    Following the assignment of the rating associated with the Assessment, the ratings of employees in each Salary Review Group ("SRG") will be input into a salary review tool that identifies a preliminary salary (or preliminary salary range) based solely upon applying a specified formula or matrix to the employee's Assessment rating, the employee's pre-review CompaRatio (salary divided by salary range midpoint), the available salary review funds for the SRG, and the comparable information for remaining SRG employees. Presently, this process is accomplished through the Salary Planning Tool ("SPT"), but Boeing anticipates that this functionality may be transferred to the Pay Visibility Tool ("PVT") during the life of the Decree.

5.    During the course of each Salary Review process during the life of the Decree, Boeing will conduct an adverse impact analysis of the extent to which the Final Salaries assigned to employees differ from their respective Preliminary Salaries. In the event that Boeing elects to modify the product of the SPT (or PVT) calculation from a preliminary salary to a preliminary salary range, then Boeing will conduct an adverse impact analysis comparing Final Salaries to the midpoint of the applicable preliminary

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1   salary range (or, if more appropriate, the median used value in the applicable preliminary

2   salary range). To the extent that a statistically significant adverse impact is identified,

3   Boeing will investigate further to determine whether there is a legitimate business-related

4   justification for such impact. If it is determined that there is no legitimate business

5   justification for the apparent adverse impact, Boeing will counsel the responsible

6   managers regarding salary equity issues, and will take appropriate remedial action, which

7   will include, if warranted, supplemental salary adjustments for affected employees.

8

9          6.        Boeing will continue the process by which each SRG is supervised by a

10  higher-level manager than the direct supervisors of the employees for whom salaries are

11  being established, known as the SRG Captain, and receives counsel from a Human

12  Resources Generalist or Specialist, known as the SRG HR Focal. The SRG Captain may

13  be, inter alia, a Skill Team Manager, a Functional Lead Manager, or a higher-level

14  manager in the direct line of supervisory responsibility. Boeing will make mandatory the

15  annual training for each SRG Captain and SRG HR Focal; this training will focus not only

16  upon the responsibilities of the individual with regard to the determination of salaries, but

17  also upon the EEO and employee equity issues pertinent to carrying out the SRG's salary

18  review responsibilities.

19

20  **D.     STARTING SALARY ISSUES**

21         1.        During the life of the Decree Boeing will develop improved tools for

22  identifying an acceptable range for the starting salary to be assigned to a newly hired

23  Boeing employee. The tool will not include as an input into the development of the

24  acceptable range the employee's pre-hire salary at his or her former employer. Inputs into

25

26

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 35

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

the tool will include, among other things, information regarding the employee's level of education and previous experience, and the salaries of similarly situated Boeing peers.

a.    It shall be permissible, however, for Boeing to consider the pre-hire salary to conduct a "reality check" on the valuation of the candidate's pre-Boeing experience, but Boeing: (a) will do so only after already applying the starting salary tool, (b) will make adjustments based on this "reality check" only where the tool-based salary range is below the employee's pre-hire salary, and (c) will maintain records of any circumstance in which the proposed salary is increased beyond the tool-based salary range as a result of this "reality check."

2.    With respect to employees promoted to a position in a different job family, Boeing will during the life of the Decree apply a variation of the starting salary tool to establish the employee's post-promotion salary. In doing so, the employee's new salary will be established without regard to the employee's salary prior to the promotion; provided, however, that Boeing will not as a result of this commitment be required to decrease an employee's salary upon being promoted.

E.    SALARY MONITORING

1.    Solely for purposes of compliance with this Decree, Boeing will annually monitor salaries of non-union SJC employees through application of the OFCCP Methodology, as refined by adding Job Family and Time in Level as variables (hereinafter the "Modified OFCCP Methodology"). Within two years following the Approval Date, Boeing may also realign its Job Aggregation Groups ("JAGs") so that Job Families are more closely aligned within a JAG to reflect similar work content, incumbent qualifications and the relationship of pay to external markets, provided that the number of

[PROPOSED] COURT-APPROVED CONSENT DECREE (No. C00-0301P) – Page 36

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN & VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    Job Aggregation Groups in the non-union SJC population will not increase to more than

2    30 (from the present 25).

3        2.      Solely for purposes of compliance with this Decree, Boeing will annually

4    monitor salaries of SPEEA Technical employees through application of the Modified

5

6    OFCCP Methodology, even though the requirement to monitor salaries pursuant to the

7    OFCCP Methodology did not apply to SPEEA Technical employees.  In doing so, Boeing

8    will identify not more than 5 JAGs to categorize the SPEEA Technical positions, based

9    upon similar work content, incumbent qualifications and relationship of pay to external

10   markets.

11       3.      Boeing intends to conduct such monitoring analyses separately by the AAP

12   site approach used under the OFCCP Methodology.  In the event Boeing deems this

13   approach no longer statistically satisfactory, however, Boeing will negotiate with Class

14

15   Counsel to identify a mutually acceptable alternative level of analysis.

16       4.      In conducting this salary monitoring, Boeing will expect to see results in

17   which there is an approximately normal distribution of the JAG-by-JAG regression

18   results, as measured by the standard deviations of actual salaries compared to predicted

19   salaries.  Thus, it will not constitute a lack of compliance with this Decree simply because

20   one or more JAGs have a statistically significant result adverse to women in a particular

21

22   year, provided that the distribution of standard deviation levels among JAGs is essentially

23   comparable for men and women.  Nevertheless, in any JAG in which the monitoring result

24   exceeds 1.96 standard deviations adverse to women, Boeing will investigate by cohort

25   analysis to determine whether there is a legitimate business justification for this

26   apparently anomalous result, and will take remedial action if no legitimate business

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 37

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    justification is identified. Such remedial action will include, if warranted, supplemental

2    salary adjustments for affected employees.

3        5.      Boeing will report annually regarding the results of the aforementioned

4    salary monitoring, using the Modified OFCCP Methodology, to the Executive Vice

5    President, Internal Services, the Vice President of Compensation and Benefits, and the

6

7    Vice President of Global Diversity and Employee Rights.

8        6.      By agreeing to conduct salary monitoring through the use of this Modified

9    OFCCP Methodology, Boeing does not concede that said methodology is the optimal

10   regression model for monitoring salary equity. In the event that Boeing gathers reliable

11   pre-Boeing experience data for all non-union SJC employees and/or SPEEA Technical

12   employees covered by this Decree, then Boeing may for such employee group(s) conduct

13   this salary monitoring through a further modification of the Modified OFCCP

14   Methodology that incorporates such data, provided that the monitoring methodology

15   credits only such pre-Boeing experience as is demonstrably job-related for both men and

16   women. Similarly, at Boeing's option, it may incorporate into the regression model used

17   to conduct salary monitoring a variable capturing the annual Assessment of an employee's

18   performance and value of contribution, provided that, for at least one year following the

19   Final Approval Date there has been no statistically significant adverse impact on women

20

21   in the assignment of such Assessment ratings for such employee group.

22

23       7.      Prior to conducting the salary review process, Boeing will run a modified

24   analysis using the foregoing Modified OFCCP Methodology, further modified by

25   substituting a single time-in variable for the "Time in Hourly" and "Time in Salaried Non-

26   Exempt" variables. Boeing will use the results of this modified analysis to flag statistical

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 38

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

"outliers" for further investigation and consideration during salary review, the results of which will be documented. As used in this context, "outliers" means those employees as to whom the difference between their actual and predicted salaries places them in the group of individuals for whom the absolute value of the standard deviation exceeds 1.96.

       a.     With respect to any employee flagged as an "outlier," Boeing will provide to the SRG Captain and HR Focal information regarding the range and distribution of salaries paid to other employees who have been in the same job family and level for the same number of years as the "outlier" employee, in the same AAP site and JAG.

       b.     The parties agree that this alternative methodology is not a complete and correct regression model, and is designed for informational purposes only; Boeing's agreement to conduct this alternative review is undertaken solely to provide additional information to those conducting and overseeing salary review, and the fact that an individual is identified as an "outlier" through this alternative analysis is not a determination that his or her salary is in fact inappropriate in any regard.

## F.    OVERTIME ISSUES

       1.     Boeing is committed to gender equity in regard to the opportunity to perform hourly overtime work in the bargaining unit subject to the collective bargaining agreement ("CBA") between Boeing and Local 751 of the International Association of Machinists ("IAM"), to the extent that the assignment of such work is not dictated by the terms of that bargaining agreement.

       a.     Overtime opportunities which are not contractually dictated would include, for example, circumstances in which (a) the employee regularly assigned to the

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 39

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

machine, job, crew or position declines the overtime, is not in attendance, or is otherwise contractually ineligible for overtime, or (b) there is more than one employee who normally performs the particular work activity on a straight time basis.

      b.     The provisions herein apply only with respect to overtime assignments which are neither dictated by or designated pursuant to the IAM CBA, such as pursuant to IAM CBA ¶ 6.10(b)(1)(a), nor dictated by the requirement that an entire work group perform overtime work; such applicable overtime assignments will be referred to herein as "Discretionary Overtime."

      c.     Notwithstanding that the remaining provisions of § 6 of this Decree do not apply to Non-Discretionary Overtime, Boeing will monitor periodically the Non-Discretionary Weekend Overtime for any results suggesting possible gender inequities, and will investigate and address (if necessary) any potential issues that may be identified through such monitoring. Because such Non-Discretionary Weekend Overtime, pursuant to the language of the CBA, may be driven by factors that are not randomly distributed, the results of such monitoring shall not be the basis for any finding of non-compliance with this Decree. Boeing will share the results of such monitoring with Class Counsel, will meet and confer with Class Counsel regarding such results, and will work together with Class Counsel to remedy any gender inequities that may be established, through such steps as increased cross-training of employees, if warranted.

      **2.**     **Discretionary Weekend Overtime.** With respect to weekend overtime opportunities, as to which there is both greater prior notice of the need for overtime work and a greater ability to schedule that overtime in advance, Boeing agrees that during the first year of the Decree it will develop a system whereby Discretionary Overtime

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

opportunities for most IAM job classifications will be rotated among those in the same job classification, shop and crew.  This proposed system will be referred to herein as the "Rotation Program."

a.    Boeing anticipates that the Rotation Program will apply to the substantial majority of positions in the IAM bargaining unit.  In developing the Rotation Program, Boeing anticipates that it will identify various sub-portions of areas or groups that, for legitimate business reasons, are not amenable to the rotation of overtime as described herein; insofar as is feasible, Boeing will identify these areas or groups in advance of the implementation of the Rotation Program.

b.    For positions subject to the Rotation Program, Boeing will create a rotation list applicable to each crew or, where appropriate in certain Factory operations, a defined team of employees within a crew.

i.    Rotation lists will be developed by job classification and seniority within the shop and shift, ordered from greatest bargaining unit seniority to least.

ii.    Employees new to the crew (or, where applicable, the team within the crew) will be added to the list in the order of their bargaining unit seniority.

c.    When asking for volunteers for a Discretionary Overtime opportunity among qualified employees in the same job classification, shop, and shift (or, where applicable, the same team) who are in attendance on the day when the weekend overtime is being assigned (*see* IAM CBA ¶ 6.10 (b)), the overtime will be offered strictly on a rotational basis.

i.    As a Discretionary Overtime opportunity arises, the assignment will be offered without exception to the employee at the top of the rotation

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 41

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

list. Whether or not the employee accepts the overtime assignment, the employee's name will be moved to the bottom of the rotation list.

ii.    If the employee at the top of the rotation list is contractually excluded from performing the Discretionary Overtime (e.g., because he/she is not in attendance on the day when the overtime is offered, was absent on one or more days during the work week, has worked two consecutive weekends, has been notified in writing of deficient work performance, etc.), he/she will be passed over and will go to the bottom of the rotation list.

iii.    If insufficient volunteers are obtained utilizing the rotation list, then the Company may designate another employee to satisfy remaining overtime requirements. (*See* IAM CBA ¶ 6.10(b)(1)(b) & (c)).

iv.    Records will be maintained of the employees who are offered each weekend Discretionary Overtime assignment, and whether he/she accepts or declines the assignment, or was contractually ineligible. Such records will be maintained for the life of the Decree, but not less than two years.

d.    With respect to weekend Discretionary Overtime opportunities that are not subject to the Rotation Program, the parties recognize that it is not feasible to implement a rotation system because of the nature of the jobs and assignments involved. As to such Discretionary Overtime opportunities, however, Boeing will maintain documentation which establishes the date of the weekend overtime work opportunity, the date that the offer to work overtime was made, the employee(s) to whom the offer was made but declined, who accepted the overtime, and the number of overtime hours worked. Such records will be maintained for the life of the Decree, but not less than two years. In

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 42

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

the event that Class Counsel determines that there is reason to believe that these weekend Discretionary Overtime opportunities that are not subject to the Rotation Program are systemically being assigned in a gender discriminatory manner, they will notify counsel for Boeing and the parties will negotiate further over whether another method can be applied to improve gender equity in regard to such opportunities. As to any individual complaints regarding equitable distribution of such weekend Discretionary Overtime opportunities that arise during the life of the Decree, the parties agree that the aggrieved employee may file a grievance with the IAM (which is the exclusive remedy if the employee asserts that the situation constitutes a violation of the CBA), or may file a complaint through a complaint mechanism to be administered by Boeing's Global Diversity organization.

   3.     **Discretionary Weekday Overtime.**  With respect to weekday Discretionary Overtime opportunities, the parties recognize that it is not feasible to implement a rotation system because of the short-notice nature of such assignments. In lieu thereof, Boeing will monitor such overtime on a quarterly basis to determine whether there appear to be statistically significant gender-correlated differences in the amount of weekday overtime worked. The parties agree that in conducting this monitoring Boeing will adjust the amount of weekday overtime statistically "expected" to be worked by women to reflect the proportionate gender-correlated differences among male and female employees with respect to their interest in working weekday overtime, and in their assignment to work non-discretionary weekday overtime, that were demonstrated in the overtime monitoring program implemented by Boeing during the litigation of this action. In the event that such quarterly monitoring identifies for more than two quarters a

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 43

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

statistically significant adjusted difference in working weekday overtime that is adverse to women, counsel for Boeing and Class Counsel will negotiate further over whether there is an alternative acceptable method to improve gender equity in the opportunity to work such overtime. As to any individual complaints regarding equitable distribution of weekday Discretionary Overtime opportunities that arise during the life of the Decree, the parties agree that the aggrieved employee may file a grievance with the IAM (which is the exclusive remedy if the employee asserts that the situation constitutes a violation of the CBA), or may file a complaint through a complaint mechanism to be administered by Boeing's Global Diversity organization.

4.   **Discretionary Overtime Complaint Mechanism.** The availability of the complaint mechanism regarding equitable assignment of Discretionary Overtime opportunities will be publicized by Boeing throughout the IAM hourly population, but such publication will be at a heightened level with regard to divisions and crews as to which the Rotation Program does not apply.

## G.   PROMOTION ISSUES

1.   Boeing will revise its procedure concerning reclassification of salaried employees ("PRO-700") during the life of the Decree. The successor to PRO-700 will clarify the limited circumstances under which vacancies in salaried positions are not required to be posted and filled through the Boeing Enterprise Staffing System ("BESS"). Until the successor to PRO-700 is implemented, Boeing will follow the current version of PRO-700 with respect to the posting of vacancies for promotions into non-union SJC and SPEEA Technical positions, as interpreted consistent with a set of interpretive guidelines

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 44

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    that will be provided to Class Counsel not later than fifteen (15) days following the

2    Effective Date.

3         2.      For openings for promotion into non-union SJC and SPEEA Technical

4    positions that are posted pursuant to PRO-700 (or its successor), Boeing will during the

5    life of the Decree adopt the principles of Structured Interviewing described herein.

6    Boeing will implement these Structured Interviewing procedures not less than six months

7

8    following the Approval Date.

9         3.      As Boeing completes its review and determination of each job's critical

10   knowledge, skills, abilities and other characteristics, as described in Paragraph 1.c, above,

11   it will incorporate this information into the requisitions for posted vacancies for

12   promotions into non-union SJC or SPEEA Technical positions.

13

14        4.      **Structured Interviews.** For any particular promotion selection into a

15   posted non-union SJC or SPEEA Technical position, all candidates who are interviewed

16   will be asked the same slate of job-related questions, designed to determine the extent to

17   which the candidate exhibits the characteristics identified as necessary or desirable for

18   successful completion of the job.  In order that candidates not be able to predict and

19   anticipate the questions to be used in a particular interview process, subsequent selection

20   decisions for the same position need not necessarily use the same slate of job-related

21   questions as utilized for previous selections, as long as all candidates for the same opening

22

23   are asked the same slate of job-related questions.

24        5.      **Team Interviews.** Boeing supports the use of team interviewing processes

25   where feasible, and commits that during the life of the Decree structured team

26   interviewing will become the usual and customary way of conducting interviews to select

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 45

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

candidates for promotional openings.  Accordingly, during the life of the Decree Boeing will train its supervisors and managers on the principles, methods and advantages of structured team interviewing, and will endeavor to use team interviews with respect to most non-union SJC and SPEEA Technical promotional openings.  By no later than the third year following the Final Approval Date, Boeing commits that structured team interviews will be utilized in over 75% of all promotional selections for non-union SJC and SPEEA Technical openings, other than (1) selections for Office Administrator positions, and (2) selections made to implement a contractual right to return to an open position at the level the employee held prior to being downgraded in a redeployment or surplus situation.  In such team interviews, at least one interviewer will be either a representative of Human Resources or a company manager other than the manager who will supervise the selected candidate.

6.      **Scored Tests.**  In the event that Boeing utilizes any scored tests in the selection of candidates for promotion into a posted non-union SJC or SPEEA Technical position, Boeing will implement blind scoring techniques designed to ensure that those scoring the test will not be able to determine readily the identity of the candidate associated with each test.

7.      **Preliminary Management Assessment Process.**  Boeing will investigate the feasibility of incorporating into the Preliminary Management Assessment Process ("PMAP") a selection assessment designed to identify whether the candidate is predisposed to stereotypical thinking adverse to females and/or minorities.  If Boeing determines that such an assessment is feasible, it will incorporate that assessment into the next revision of the PMAP.  Regardless whether such an assessment is incorporated into

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 46

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

PMAP, Boeing will during the life of the Decree include within its training program for newly selected first-level managers a module regarding the importance of avoiding such stereotypical thinking.

**H.   EQUAL EMPLOYMENT OPPORTUNITY COMPLAINT ISSUES**

1.     During the five years in which this case has been pending, Plaintiffs have observed that Boeing has significantly modified its Equal Employment Opportunity ("EEO") complaint processing policies and procedures.  Plaintiffs acknowledge that in many regards these policies and procedures constitute a fully appropriate system for investigating and resolving such complaints.  Subject to the changes described herein, Boeing agrees to maintain these policies and procedures throughout the life of the Decree. This commitment, however, is not intended to preclude Boeing from making further improvements in these policies and procedures during the life of the Decree.

2.     Not later than 120 days following the Approval Date, Boeing will modify its organizational structure so that the EEO Investigation process reports to Boeing World Headquarters.  Throughout the life of the Decree, all EEO investigations will be conducted by EEO Investigators, and all EEO Investigators will report through a chain of command leading directly to an official in Boeing World Headquarters, rather than to any of the various business units.  Presently, that official is the Vice President of Global Diversity and Employee Rights.

3.     Not later than 120 days following the Approval Date, Boeing will modify the EEO complaint processing procedures so that once an EEO Investigator recommends that a corrective action be imposed following an investigation, that corrective action recommendation cannot be countermanded by line management without concurrence by

[PROPOSED] COURT-APPROVED CONSENT DECREE (No. C00-0301P) – Page 47

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

the Global Diversity organization. If it deems the corrective action unsupported, line management may elevate the decision to progressively higher levels of management of both the business unit and the Global Diversity organization. Similarly, an appeal process will be available to the employee who receives any corrective action.

4.      Not later than 120 days following the Approval Date, Boeing will modify the EEO complaint processing procedures so that once corrective action has been taken, the complaining party will be informed of the type of corrective action that was applied, but not the details of the action.

      a.      When revealing corrective action taken against a person, the EEO Investigator must impress upon the complainant the confidentiality of the information being disclosed and that it should not be disclosed further. The EEO Investigator should use words to the following effect: "Before I reveal the corrective action taken against a person, you need to acknowledge that you will maintain the confidence of this information and not share it with anyone. Can you agree to this?" Before making any such disclosure, the EEO Investigator must obtain the complainant's agreement, and should make a note of that agreement in the investigative log.

5.      Boeing agrees that during the life of the Decree it will enhance its message prohibiting sexual and gender harassment.

      a.      In recommending corrective action against a person found to have violated Boeing's policy prohibiting sexual or gender harassment, Boeing's EEO Investigators generally will recommend, among other things, that the perpetrator attend gender sensitivity training, absent documented extenuating circumstances.

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 48

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1

2          b.      In recommending corrective action against a person found to have

3  violated Boeing's policy prohibiting unwanted physical contact of a sexually harassing

4  nature, Boeing's EEO Investigators generally will recommend the suspension or

5  termination of the perpetrator, absent documented extenuating circumstances. In the event

6  neither suspension nor termination is imposed in such circumstances, the Vice President

7  of Global Diversity and Employee Rights (or her designee) will review the documentation

8  concerning the extenuating circumstances.

9          c.      At approximately 1 year and 3 years after the completion of a

10 complaint investigation involving alleged gender and/or sexual discrimination, Boeing

11 will interview the complainant to determine whether he/she believes that he/she has been

12 retaliated against for having come forward with the subject complaint. If the complainant

13 contends retaliation has occurred, Boeing will examine its files to determine whether there

14 is any factual basis to support his/her retaliation claim. Among the information that may

15 be reviewed in this examination, depending on the complainant's allegations, will be the

16 complainant's pre-complaint and post-complaint salary increases, PE reviews, overtime

17 opportunities, etc. This follow-up may include a further interview of the complainant. If

18 Boeing finds evidence of potentially retaliatory conduct, Boeing will take appropriate

19 corrective action and will continue the annual examination for at least two years following

20 the potentially retaliatory conduct.

21

22

23

24          VI.     REPORTING AND RECORDKEEPING

25 A.     DOCUMENT PRESERVATION

26

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 49

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    Boeing shall retain, in paper or electronic form, all employment-related records

2  required to be created or maintained by this Decree for the Term of the Decree, but not

3  less than two years, whichever is longer.  This provision, however, will not supercede any

4  obligation under state or federal law to maintain such records for a longer period.  Class

5  Counsel shall be entitled to review, upon reasonable advance notice, all records required

6  to be maintained by Boeing pursuant to this Decree, for the purpose of confirming

7  Boeing's compliance with this document retention requirement.  In the event that Class

8  Counsel determines that it is necessary to seek relief from the Court pursuant to Section

9  VII to remedy an alleged and unremedied failure to maintain employment-related records

10 required to be created or maintained by this Decree, then Class Counsel shall be entitled to

11 obtain copies of relevant records to present to the Court.

**B.    REPORTING REQUIREMENTS**

**1.    Reporting Schedule**

Boeing shall provide annual reports to Class Counsel on Boeing's compliance with

the requirements of Section V of the Decree, throughout the Term of the Decree.

However, where underlying data concerning the Weekday Overtime monitoring

provisions of Section V.F.3 is to be produced, it shall be provided to Class Counsel

quarterly.  In the event that Boeing utilizes pre-Effective Date salary review periods to

satisfy the requirements of Section III.C.2, then Boeing shall provide to Class Counsel the

information described in Sections VI.A.2.d-f, within ninety (90) days following the

conclusion of the salary review period, notwithstanding that the Effective Date has not yet

occurred.

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 50

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**2.    Information to Be Reported**

The compliance reports shall include the following information with respect to the operations of The Boeing Company and the McDonnell Douglas Corporation in the Puget Sound area of the State of Washington, with regard to non-executive, non-SPEEA-engineer positions:

a) Description of Boeing's progress in reviewing and revising, as necessary, job descriptions of the non-union SJC positions during the reporting period;

b) Description of any material revisions to Boeing's Performance Evaluation form and performance evaluation process that are implemented during the reporting period;

c) The extent to which Performance Evaluation forms are completed on non-union SJC and SPEEA Technical employees each year during the life of the Decree.

d) Description of any material revisions to Boeing's employee compensation policies and procedures that are implemented during the Class Period, including changes to the Assessment rating system, Boeing's salary planning tool(s), Boeing's starting salary tool(s), and any disparate impact analysis results required by the Decree to be generated;

e) Description of any normalization process implemented by one or more of Boeing's Puget Sound business units for the salary review exercises during the reporting period;

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

f)  With respect to the Salary Monitoring specified in Section V.E, copies of the computer program output adequate to identify to Class Counsel information from that monitoring that will demonstrate that the salary review exercises do not adversely affect women;

g)  Description of any material revisions to the internal complaint procedure that are implemented during the reporting period;

h)  Summary of internal complaints received during the reporting period alleging violations of this Decree and/or Gender Discrimination, sexual harassment, or retaliation in connection with complaints or protests of Gender Discrimination.  The summary shall include a description of the substance of such complaints, the identity of the complainants, the identity of the person alleged to have engaged in the act or conduct complained of, a description of the investigations undertaken in response to such complaints, the results of such investigations, and any remedial and/or disciplinary measures imposed.  This summary shall be kept confidential and shall not be provided to any person or entity not a party to this Consent Decree.  In the event that Class Counsel seeks to share such information with one or more of the Named Plaintiffs, Class Counsel will do so only in a summary fashion, redacting any identifying information and/or details that would permit the Named Plaintiffs to obtain any individualized information invading the privacy of any Boeing employee, or to obtain

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

information broader than what would be shared with a complaining party pursuant to Section V.H.4;

i) Summary data and/or reports prepared in the ordinary course of Boeing's business sufficient to ensure that Class Counsel can independently review whether there is an adverse impact by gender in promotions for hourly employees or employees in SPEEA Technical, Salaried Non-Exempt, or Salaried Exempt positions, including but not limited to summary information concerning dates of promotion, gender of candidates considered, gender of candidates selected, and level of position;

j) Description of any material changes to Boeing's promotion interview and testing processes applicable to hourly, SPEEA Technical, Salaried Non-Exempt, or Salaried Exempt positions;

k) Description of any material changes to Boeing's hourly overtime policies and procedures, and the results of any disparate impact or monitoring studies required to be conducted pursuant to Section V.F of this Decree;

l) Description of the content and status of the development and implementation of the salary captain and HR focal training during the reporting period, and the number of individuals (if any) who were required to but failed to participate in or complete such training during the reporting period.

## VII.   DISPUTE RESOLUTION PROCEDURE

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 53

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

## A.   GENERAL PRINCIPLES

### 1.   Dispute Resolution Mandatory

Neither party may seek relief from the Court prior to exhausting the mandatory dispute resolution provisions set forth below.

### 2.   Best Efforts

The parties agree that they will make best efforts to resolve any disputes concerning any alleged material breach of this Consent Decree through the dispute resolution procedure set forth below, and that resolution by the Court is a last resort.

## B.   NEGOTIATION AND MEDIATION

1.   Class Counsel or Boeing shall notify counsel for the other party, in writing, regarding the facts, circumstances, and any other arguments supporting its position that the other party is materially out of compliance with any provision of the Consent Decree. Within twenty-one (21) days of receiving such notice, the responding party will have the opportunity to inquire further about the subject of the complaint and informally resolve the issue.

2.   At the conclusion of the twenty-one (21) day period, if Class Counsel or Boeing, after good faith efforts to resolve the matter have failed, determines that the matter has not been resolved satisfactorily, that party may request that the parties appoint a Mediator to assist in resolving the dispute.

3.   In the event that mediation of the dispute is unsuccessful, or that the parties do not mutually agree to mediate the dispute, then either party may apply to the Court for appropriate relief to enforce the provisions of this Decree.

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 54

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

C.     ATTORNEYS' FEES AND COSTS

In the event that Class Counsel succeeds in a motion seeking relief from the Court to remedy a material breach of this Decree, then Class Counsel shall be paid attorneys' fees, on a prevailing party basis,  at their then-current hourly rates, plus reasonably necessary costs and expenses, for all work reasonably necessary to enforce the provisions of this Decree through the presentation of disputed issues for decision by the Court. Compensable time and expenses hereunder shall not include any work involved in investigating the alleged non-compliance, in providing notice of the alleged non-compliance, or in seeking to resolve the dispute pursuant to the "Negotiation and Mediation" provisions of this Section of the Decree, all of which are considered part of the monitoring responsibilities of Class Counsel for which they are already being compensated through the provisions of this Decree.

D.     EXTENSION OF TIME

The parties may, by mutual consent, extend any time period set forth in this dispute resolution procedure.


VII.     VOLUNTARY DISMISSAL WITH PREJUDICE

The Class Complaint filed in this action against Boeing shall be dismissed in its entirety, with prejudice, upon the Effective Date, pursuant to a Joint Stipulation of Dismissal with Prejudice.  Notwithstanding this Dismissal with Prejudice, the parties stipulate that the Court shall retain jurisdiction over the parties for purposes of such further orders as may be necessary to enforce or effectuate this Consent Decree.

[PROPOSED] COURT-APPROVED CONSENT DECREE (No. C00-0301P) – Page 55

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

| | |
|---|---|
| 1 | **VIII.  ATTORNEYS' FEES AND EXPENSES** |
| 2 | |
| 3 | **A.**     Attorneys' fees of 25% of the  Total Fund (after first deducting only the award of |
| 4 | |
| 5 | costs and expenses pursuant to Section VIII.B) may be sought by Class Counsel, and |
| 6 | Boeing will not object to any percentage that does not exceed 25%; provided, however, |
| 7 | that the total fees without costs will be no greater than $15.0 million, and fees and costs |
| 8 | together will not exceed $18.0 million, except as provided pursuant to Section IV.A.3 or |
| 9 | Section VII.C.  Attorneys' fees are defined to include fees for time spent in this case by |
| 10 | attorneys, law clerks and paralegals employed by Class Counsel. |
| 11 | |
| 12 | **B.**     Plaintiffs may apply to the Court for an award of all their costs and expenses, in an |
| 13 | |
| 14 | amount not to exceed $3.0 million.  Plaintiffs shall be responsible for paying all their |
| 15 | litigation costs, expenses, monitoring costs, monitoring fees, claims administration, |
| 16 | notices, mailings, postage and all other costs of the administration of the settlement |
| 17 | (except expenses associated with calculating the distribution amounts shall be paid by |
| 18 | Boeing).  Should Plaintiffs' actual costs and expenses exceed $3.0 million the excess shall |
| 19 | |
| 20 | be paid from, first, any interest payments pursuant to Section IV.A.3, and second, if |
| 21 | necessary, the attorneys' fees approved by the Court. |
| 22 | |
| 23 | **C.**     Any cost that may otherwise be recoverable by third parties that have a |
| 24 | relationship with a party in This Case shall be the obligation of the party for whom such |
| 25 | third party initially rendered services, including any third party with a pending motion |
| 26 | seeking reimbursement for costs. |

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 56

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**D.**      Any fees and expenses payable to Class Counsel shall be within the sole

discretion of the Court.  The validity of the Consent Decree is not contingent on any ruling

regarding the payment of attorneys' fees and expenses.


## IX.      PROCEDURES FOR FAIRNESS HEARING


**A.**      Subject to approval by the Court, the parties hereby agree to the following

procedures and schedule for notice to Class Members and submission of this Consent

Decree to the Court for approval pursuant to Rule 23(e) of the Federal Rules of Civil

Procedure.

      **1.**      At the time this Consent Decree is submitted to the Court, the parties each

agree to opine to the Court that it is fair, reasonable, and adequate to the Class as a whole,

within the meaning of that phrase contemplated by Rule 23(e) of the Federal Rules of

Civil Procedure.  Counsel for the parties shall request prompt judicial approval of this

Decree as written.

      **2.**      Attached hereto as Exhibit A is a proposed Notice of Proposed Class

Action Settlement and Fairness Hearing, which the parties hereby request that the Court

approve.  Within twenty-one (21) days after the Preliminary Approval of this Consent

Decree, the Claims Administrator shall send by first-class mail, United States Postal

Service, to the last known address of each Class Member a copy of the Notice of Proposed

Class Action Settlement and Fairness Hearing.  Boeing shall provide the list of Class

Members and their addresses and social security numbers to the Claims Administrator

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 57

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

within ten (10) days following Preliminary Approval of this Consent Decree, in a format designated by the Claims Administrator.

3.     The parties agree to request that the Court schedule a hearing to determine whether this Consent Decree is fair, reasonable, and adequate to the Class as a whole (the "Fairness Hearing"), as required by Rule 23(e) of the Federal Rules of Civil Procedure, at the earliest practicable time on or after seventy-five (75) days following Preliminary Approval of this Consent Decree.

4.     Any Class member who wishes to object to the terms of this Decree, or its implementation with respect to her, shall be required to submit to the Court, not later than fifty-one (51) days after the Preliminary Approval of this Consent Decree (the "Cutoff Date"), which will be stated as a "date certain" in the Notice of Proposed Class Action Settlement and Fairness Hearing mailed to the Class, a written statement of any objections, with copies to counsel for both parties. The statement shall comport with the procedures set forth in the Notice of Proposed Class Action Settlement and Fairness Hearing. The statement shall contain the individual's name, address and telephone number, along with a statement of his or her objection(s) to the Decree and the reason(s) for those objection(s), and an express statement of whether she wishes to speak at the Fairness Hearing.

5.     Any attorney retained by an individual Class Member at her own expense to submit objections and/or appear at the Fairness Hearing on her behalf must, not later than the Cutoff Date, identify him/herself in writing to the Court, submit written objections, and state expressly whether he or she desires to speak at the Fairness Hearing. The statement shall comport with the procedures set forth in the Notice of Proposed Class

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 58

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    Action Settlement and Fairness Hearing.  Objections raised at the Fairness Hearing shall

2    be limited to those matters addressed in timely written objections.

3

4

5                    X.    APPLICABLE CONTRACT PRINCIPLES

6

7    A.    COUNTERPARTS

8            This Consent Decree may be executed in one or more counterparts, and each

9    executed copy shall be deemed an original, which shall be binding upon all parties to this

10   Decree.

11

12   B.    HEADINGS

13           The headings in this Consent Decree are for the convenience of the parties only,

14   and shall not limit, expand, modify, amplify, or aid in the interpretation or construction of

15   this Consent Decree.

16

17   C.    ENTIRE AGREEMENT

18           This Consent Decree, including Exhibits, comprises the full and exclusive

19   agreement and understanding of the parties with respect to this settlement, and supersedes

20   all prior written or oral agreements (including, without limitation, any and all term sheets

21   previously agreed to by the parties).  No representations or inducements to compromise

22   this action have been made, other than those recited in this Decree.  This Decree does not

23   impose any obligations on the parties beyond the terms and conditions stated herein.

24   Accordingly, this Decree shall not prevent or preclude Boeing from revising its

25

26

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 59

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street  Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1 │ employment practices and policies or taking other personnel actions during the term of the

2 │ Decree that do not violate the requirements of the Decree.

3

4 │ **D.    NO WAIVER**

5 │ The waiver by any party of any term, condition, covenant, or representation of this

6 │ Consent Decree, or the breach of any term, condition, covenant, or representation herein,

7 │ in any one instance, shall not operate as, or be deemed to be a waiver of, the right to

8 │ enforce any other term, condition, covenant, or representation. The failure by any party at

9

10 │ any time to enforce, or require performance of, any provision of this Decree shall not

11 │ operate as a waiver of, or limit such party's right at a later time to enforce or require

12 │ performance of such provisions or of any other provisions of this Decree, subject to the

13 │ limits of the Court's jurisdiction set forth above in Section III.B.

14

15 │ **E.    SEVERABILITY**

16 │ Except as set forth below, if after Final Approval any term or provision of this

17 │ Decree, or the application thereof to any person or circumstances, is held to any extent to

18 │ be invalid or unenforceable, the remainder of this Decree, or the application of such term

19 │ or provision to persons or circumstances other than those as to which it is held to be

20

21 │ invalid or unenforceable, shall not be affected thereby, and each term and provision of this

22 │ Decree shall be valid and enforceable to the fullest extent permitted by law.

23 │ Notwithstanding the above, if (1) all of the monetary relief provisions in Section IV; or (2)

24 │ all of the equitable relief provisions in Section V;  or (3) the release/bar provisions in

25 │ Section III.D.2 of this Decree are held to be invalid or unenforceable, the entire Decree

26 │ shall be null and void.

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 60

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street  Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**F.     GOVERNING LAW**

The parties agree that the validity, construction, and enforcement of this Decree

shall be governed by federal law. To the extent that it is determined that the validity,

construction, or enforcement of this Decree is governed by state law, the law of the state

of Washington shall apply.

**G.     NOTICE TO PARTIES**

Whenever this Decree provides for notice to be given to the parties, such notice

shall be served on the parties as follows:

**Notice To the Plaintiff Class Shall Be Sent To:**

Joseph M. Sellers, Esq.
Cohen, Milstein, Hausfeld &
   Toll, P.L.L.C.
1100 New York Avenue, N.W.,
Suite 500, West Tower
Washington, D.C.  20005

and

Michael D. Helgren, Esq.
McNaul Ebel Nawrot Helgren & Vance, PLLC
600 University St., Suite 2200
Seattle, Washington  98101

**Notice To Boeing Shall Be Sent To:**

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 61

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street. Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1

2
C. Geoffrey Weirich, Esq.
Paul Hastings Janofsky & Walker, LLP
3
600 Peachtree Street., N.E.
Suite 2400
4
Atlanta, GA 30308

5

6

7

**H.     EXTENSION OF TIME BY AGREEMENT OF PARTIES**
8

9
    All time deadlines established in this Decree may be extended by agreement of the

10
parties.

11

12

13

14

**I.     BINDING AGREEMENT**
15

16
    This Consent Decree is binding on all parties and their successors, assigns,

17
representatives, and trustees.

18

19

**J.     CHANGES IN LAW**
20

21
**1.     ILLEGAL ACTION NOT REQUIRED**

22
    Boeing shall not be obligated to carry out any term of this Consent Decree if any

23
otherwise applicable current or future state or federal statute or regulation precludes

24
Boeing from complying with that term.  Boeing shall notify Class Counsel and the Court

25

26

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 62

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    should any such change in law prevent Boeing from complying with any term of this

2    Consent Decree during the Term of the Decree.

3

4    **2.    Modification of Decree to Conform to Changes in Law**

5

6    In the event that changes in the law subsequent to the Effective Date of this

7    Consent Decree make any of its provisions contrary to law either as written or as applied,

8    either party may request that the other party negotiate in good faith over modifications

9    that will ensure that the objectives of this Decree may be achieved.

10

11

12

13   **AGREED:**

14

15   DATED this _____ day of July, 2004.

16   Respectfully submitted,

17   By: _____          By: _____
     Michael D. Helgren, WSBA No. 12186       Joseph M. Sellers

18   MCNAUL EBEL NAWROT HELGREN & VANCE,
     PLLC

19   600 University Street                 By: _____
     Suite 2700                            Christine E. Webber

20   Seattle, WA 98101-3143                Julie Goldsmith Reiser, WSBA 27485
                                           COHEN, MILSTEIN, HAUSFELD

21                                           & TOLL, P.L.L.C.
                                           1100 New York Avenue, N.W.

22                                         West Tower, Suite 500
                                           Washington, DC 20005

23                                         (202) 408-4600

24

25   Counsel for Plaintiffs

26

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 63

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1

2  By:_____       By:_____
   C. Geoffrey Weirich                      Lawrence B. Hannah
3  Barbara B. Brown                         Nancy Williams
   Maureen E. O'Neill                       James Sanders
4  PAUL HASTINGS JANOFSKY & WALKER, LLP      PERKINS COIE, LLP
   600 Peachtree Street., N.E.              1201 Third Avenue
5  Suite 2400                               Suite 4800
   Atlanta, GA 30308                        Seattle, WA  98101
6

7

8

9

10  Counsel for Defendants

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

[PROPOSED] COURT-APPROVED CONSENT
DECREE (No. C00-0301P) – Page 64

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-18.0