Hon. Marsha J. Pechman
Plaintiffs' Motion No. 51

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARY BECK, et al.,

　　　　　　　　　Plaintiffs,

　　v.

THE BOEING COMPANY,

　　　　　　　　　Defendant.

No. C00-0301P

CLASS COUNSELS' PETITION
AND MEMORANDUM IN
SUPPORT OF AN AWARD OF
ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES

**NOTED FOR:  October 8, 2004**

CLASS COUNSELS' PETITION FOR ATTORNEYS'
FEES AND EXPENSES (No. C00-0301P)

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION AND RELIEF REQUESTED ......................................................1

II.   BACKGROUND ................................................................................................1

    A.    The Litigation..........................................................................................1

    B.    Changes in Boeing's Practices After This Litigation Was Filed.. ................3

    C.    The Settlement. ........................................................................................4

           1.    Compensation. ..............................................................................5

           2.    Promotions. ..................................................................................6

           3.    Overtime. .....................................................................................6

           4.    EEO Investigation/Sexual Harassment. ............................................7

           5.    Record Retention/Destruction..........................................................8

    D.    The Efforts of Class Counsel. .....................................................................8

III.  STATUTORY AND CASE LAW SUPPORT APPROVAL OF THIS FEE
      PETITION..........................................................................................................9

    A.    Class Counsel Have Enforced the Civil Rights Laws....................................9

    B.    The "Common Fund" Method is the Appropriate Method for
         Awarding Fees in This Litigation. ..............................................................10

    C.    The Fee Request Satisfies the Standards for Reasonableness. ....................12

           1.    Class Counsel Achieved a Substantial Benefit for the Class..........12

           2.    Litigating the Case Posed Substantial Risks....................................13

            3.    Class Counsel Negotiated Important Programmatic Relief. ...........15

           4.    Duration of Litigation. ..................................................................15

            5.    Market Rate..................................................................................16

           6.    The Requested Fee is Justified by Any Lodestar
              Comparison. ................................................................................16

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

D.   Reimbursement and Payment of Class Counsel's Expenses is Appropriate. ............................................................................17

E.   It is Appropriate to Pay Class Counsel a Portion of Their Fees on the Effective Date or January 15, 2005.......................................17

CLASS COUNSELS' PETITION FOR ATTORNEYS'
FEES AND EXPENSES (No. C00-0301P) – Page ii

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

# I. INTRODUCTION AND RELIEF REQUESTED

Through the combined efforts of class counsel and the named plaintiffs, the class claims for injunctive relief and damages against The Boeing Company ("Boeing") have been resolved.  Boeing has agreed to make various programmatic changes to its personnel policies and practices and to create a settlement fund in the range of $40.6 and $72.5 million (the "Settlement Fund"), depending on Class participation in the settlement.  This settlement was achieved by the skill, creativity, perseverance and hard work of class counsel and offers significant relief for the Class.

To date, class counsel have received no compensation of any kind for their efforts over a period of more than five years.  Class counsel respectfully move for an award of attorneys' fees and for reimbursement of expenses thus far incurred.  Through August 3, 2004, class counsel have invested 43,992 hours in the case, amounting to $10,500,541 in fees at current hourly rates, and incurred $3,023,018 in expenses ($3,290,984.95 or more, when adjusted for interest).  Class counsel ask the Court to authorize payment of (a) litigation expenses in the amount of $3 million and (b) attorneys' fees of 25 percent of the net settlement sum (i.e., the total settlement minus $3 million of expenses), up to a maximum fee award of $15 million.  Petitions for fees for services for administering, implementing, and monitoring the Consent Decree, for any further litigation expenses, and for distribution of any unallocated interest earnings, are reserved for the future.  *See* Consent Decree at IV.A.3 and VII.C.

# II. BACKGROUND

A.    The Litigation.

On February 25, 2000, twenty-eight current or former female employees sued Boeing, alleging systemic gender discrimination.  They brought the action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("Title VII"), the federal Equal Pay Act, 29 U.S.C.

CLASS COUNSELS' PETITION FOR ATTORNEYS'
FEES AND EXPENSES (No. C00-0301P) – Page 1

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1 §206(d) ("EPA"), and the Washington Law Against Discrimination, RCW 49.60

2 ("WLAD").

3        Plaintiffs alleged, among other things, that Boeing had discriminated against its

4 female employees with regard to compensation, promotions and overtime assignments

5 since at least as early as February 25, 1997.  Boeing denied the allegations.  By the time of

6 the settlement, this was among the most hotly-contested class actions of its kind.  In the

7 first nine months of this litigation alone, Boeing devoted more than 26,000 hours of

8 attorney, paralegal, and clerk time on document and electronic data production matters.

9 Declaration of Michael D. Helgren ("Decl. of Helgren") at ¶ 3 (filed herewith).  At an

10 average of $150.00 per hour, that amounted to nearly $4 million for that period, without

11 fees and costs incurred for depositions and motion practice.  Ultimately, the parties

12 produced nearly a million pages of documents, took over 250 depositions, and filed more

13 than 90 motions.  *Id.*  Copies of the briefing and exhibits for the motions occupy

14 approximately 31 feet of shelf space.  *Id.*  Collectively, the parties had 11 testifying

15 experts.  Boeing alone listed over 70 trial witnesses and conducted multi-day depositions

16 of many of the named plaintiffs.  Hundreds of class members called and were interviewed

17 by class counsel.

18        As the Court will recall, in the class certification and summary judgment motions,

19 Boeing alleged that there were very few or no central policies and that its 10,000 line

20 managers had great discretion in their compensation, promotion, and overtime decisions.

21 Boeing argued that class certification was inappropriate and that there could not be a

22 pattern or practice of discrimination, because each of these thousands of managers acted

23 independently.  Boeing further argued that because the decisionmakers were each

24 independent, specific evidentiary hearings and determinations were required for each class

25 member.  To disprove these allegations required that class counsel interview hundreds of

26 class members, review nearly a million pages of documents, and spend hundreds of

CLASS COUNSELS' PETITION FOR ATTORNEYS'
FEES AND EXPENSES (No. C00-0301P) – Page 2

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1  thousands of dollars on statisticians and other experts, to identify and prove the common

2  practices that disadvantaged women.  Not only did Boeing's vigorous defense increase the

3  litigation expenses, but its discovery plan increased counsel's risk, expenses, and the

4  hours needed to successfully prosecute this action.  *See* Decl. of Helgren, at ¶¶ 4-5.

5        In 2001 the Court certified the lawsuit to proceed as a class action for female

6  employees in the Puget Sound region, and held that plaintiffs could seek punitive damages

7  in addition to their claims for injunctive relief.  The Court certified two subclasses,

8  consisting of (1) all non-executive, salaried women employees (excluding SPEEA

9  engineers) in Boeing's Puget Sound facilities; and (2) all hourly women employees

10  covered by collective bargaining agreements with the IAM union in Boeing's Puget

11  Sound facilities.  *Beck v. Boeing Co.,* 203 F.R.D. 459, 460 (W.D. Wash. 2001).

12        Boeing appealed the certification.  On February 25, 2003, the Ninth Circuit

13  affirmed certification for purposes of determining whether Boeing had engaged in a

14  pattern and practice of discriminatory conduct.  *Beck v. Boeing Co.,* 2003 WL 683797, *1

15  (9th Cir. Feb. 25, 2003).

16  B.     Changes in Boeing's Practices After This Litigation Was Filed.

17        When this class action was filed, most of Boeing's salaried female employees in

18  Puget Sound were in job groups where, on average, women were paid less than their male

19  co-workers.  During the three years before this lawsuit was filed, for example, most Puget

20  Sound area salaried female employees made, on average, approximately $1,000 per year

21  less than their male peers.  After this case was filed, however, Boeing allocated millions

22  of dollars to reduce such disparities.  Today, with limited exceptions, Boeing's internal

23  analyses show that most of its salaried female employees are not being paid statistically-

24  significant lower salaries than their male peers.  According to Boeing's analyses, gender-

25  based pay differences have been reduced by nearly $10 million annually since this lawsuit

26  was filed.

CLASS COUNSELS' PETITION FOR ATTORNEYS'
FEES AND EXPENSES (No. C00-0301P) – Page 3

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    In 1997, Boeing's hourly Puget Sound female employees, as a group, received

2    approximately $6 million per year less in overtime than their male co-workers. Since this

3    lawsuit was filed, overtime disparities have been reduced by 75 percent from 1997 levels.

4    C.    The Settlement.

5    The settlement furthers the changes brought about by the lawsuit, provides

6    additional monies for prior pay disparities, and requires Boeing to formally improve its

7    employment practices to eliminate any remaining gender-based disparities in pay over a

8    three-year period. Class counsel believe the changes in Boeing's employment practices

9    will generate or ensure as much as $15 million per year in future additional compensation

10    for Boeing's Puget Sound female employees.

11    To compensate for past gender-based pay differences, Boeing has agreed to pay at

12    least $40.6 million and as much as $72.5 million to qualified class members. The actual

13    settlement amount will depend on the level of participation of class members. The

14    settlement funds will be distributed based on a formula that allocates the monies in

15    accordance with the job groups and years worked.

16    Every qualified class member, regardless of the distribution formula, will receive

17    at least $500. Others may receive tens of thousands of dollars, depending on how long

18    they worked at Boeing, when, and in which jobs.

19    In addition to the monies Boeing already allocated during the lawsuit to reduce pay

20    differences and the settlement money to be paid for historical losses, Boeing has agreed to

21    widespread programmatic changes to reduce the risk of future gender-biased employment

22    decisions. During the course of this lawsuit, plaintiffs' experts – from the fields of

23    industrial organization, human resources, and regulatory compliance and enforcement –

24    identified deficiencies in employment practices that contribute to biased decisions in

25    compensation, promotion and overtime assignments. In the settlement, Boeing agrees to

26

CLASS COUNSELS' PETITION FOR ATTORNEYS'
FEES AND EXPENSES (No. C00-0301P) – Page 4

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    make important changes to remedy or reduce these deficiencies.  Some of these changes

2    are summarized below.

3         1.     Compensation.

4         Plaintiffs' experts concluded that some of Boeing's employment practices

5    perpetuated societal wage discrimination (the "wage gap") between men and women,

6    permitted gender stereotypes or gender-biased opinions to infect Boeing's employment

7    decisions, and disadvantaged women throughout their Boeing careers through arbitrary

8    restraints on pay adjustments.  With this settlement, Boeing promises to rectify these and

9    other deficiencies by:

- Changing the manner in which it establishes salaries for women when hired or promoted so that prior gender-biased wage discrimination is not perpetuated.  Women will be paid in accordance with what their peers are paid for similar work, without regard to whether the women had been paid less historically than male peers.

- Conducting documented performance reviews so that compensation decisions are based on documented performance and legitimate job-related criteria, not on unsubstantiated or stereotypic beliefs.

- Requiring the decision-makers to be familiar with the performance of the employees whose salaries they are establishing, and to be trained in Equal Employment Opportunity issues, so that they do not use preconceived or unsubstantiated gender-based perceptions.

- Requiring that the performance/compensation process be checked annually in four different ways, to determine whether the performance reviews given to women are unfairly adverse because of their gender, and/or whether gender is playing an unjustified role in compensation review and merit raises.  There will be multi-stepped checks and balances to ferret out gender-biased decisions, beginning with performance reviews and concluding with the annual merit raises.

- For three years Boeing will provide class counsel with data and records necessary to assess whether the performance and compensation decisions for the Puget Sound female employees show statistically significant gender disparities.

CLASS COUNSELS' PETITION FOR ATTORNEYS'
FEES AND EXPENSES (No. C00-0301P) – Page 5

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1       2.    <u>Promotions.</u>

2       Plaintiffs' experts concluded that Boeing's promotion practices increased the risk

3   of gender-biased decisions.  Among other things, the job descriptions were at times

4   insufficient to permit informed decisions about whether a woman was qualified for the

5   open position; promotion decisions were often made by a single manager and were not

6   checked for gender-bias; and the interview process, in particular the interview questions,

7   could be manipulated to permit a less qualified male candidate to be promoted over a

8   more qualified woman.  In the settlement, Boeing agrees to change its practices as

9   follows:

10          •   For the next three years, Boeing will reevaluate and publish
11            the skills and qualifications necessary for each of its jobs.
          These skills and qualifications, once published, will be used
12            in assessing the promotional candidates.

13          •   For most jobs, more than one individual (often an HR
          representative) will participate in promotional decisions in
14            order to reduce the risk of a single, gender-biased manager
          unfairly assessing a woman's qualifications or candidacy.

15          •   For each open position, Boeing will use the same interview
          process, including a consistent set of job-related questions,
16            in assessing the qualifications of each candidate, so that men
          and women will be assessed by the same criteria.

17

18          •   Boeing will use blind scoring techniques for any scored
          promotional tests.  That is, in scoring the tests, the grader
19            will not know the gender of the test-taker.

20          •   Boeing will test potential managers for stereotypical
          thinking adverse to women where such testing is feasible.

21          •   For the next three years, Boeing will provide class counsel
22            the data and reports necessary to assess whether
          promotional opportunities appear to be subject to
23            statistically significant gender-bias.

    3.    <u>Overtime.</u>

24      Plaintiffs' experts determined that Boeing's overtime processes disadvantaged

25  women.  Specifically, managers were largely free to select whomever they wanted for

26  overtime assignments, and Boeing failed to document and monitor this process for gender-

CLASS COUNSELS' PETITION FOR ATTORNEYS'
FEES AND EXPENSES (No. C00-0301P) – Page 6

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    bias.  In the settlement, Boeing has agreed both to largely eliminate and to monitor the

2    discretion of individual managers in most overtime assignments.  Most discretionary

3    overtime will now be assigned based on pre-established rotational lists or the assignments

4    will be documented and monitored to determine whether they are gender-biased.

5         Boeing will provide class counsel with the data and reports for the next three years

6    to help guard against gender-bias in the discretionary overtime processes and will, where

7    appropriate, implement additional process improvements to rectify any gender-based

8    disparities.

9         4.    EEO Investigation/Sexual Harassment.

10        In the past, many Boeing employees who investigated complaints of sexual or

11   gender harassment lacked independence and enforcement powers.  They often were

12   "employees" of the operating groups that they were charged to investigate, and so were

13   often evaluated, paid, and promoted by the very organizations that they policed.

14   Typically, the manager of the alleged offender had power to veto any sanctions proposed

15   by the EEO investigator.  Because of these sorts of deficiencies, plaintiffs alleged that

16   Boeing permitted a corporate culture hostile to women; that there were insufficient

17   remedies for gender-related misconduct; that women who complained of gender-related

18   misconduct often suffered retaliation; and, that, for such reasons, women often would not

19   report gender or sexual harassment.  In the settlement, Boeing agrees to make the

20   following changes and others:

- The Boeing employees charged with investigating gender-related or sexual harassment charges will report to corporate headquarters rather than to the organization that they are investigating.

- No sanction or punishment recommended by a Boeing investigator can be unilaterally vetoed by the offender's manager.

- Except in limited circumstances, the sanction for inappropriate physical contact will be suspension or termination.

CLASS COUNSELS' PETITION FOR ATTORNEYS'
FEES AND EXPENSES (No. C00-0301P) – Page 7

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

- Boeing will conduct periodic reviews of alleged gender or sexual harassment discrimination charges to determine whether there has been any retaliatory conduct towards the reporting employees, such as adverse compensation or promotional decisions.

- For the next three years, Boeing will provide class counsel the documents necessary to assess whether Boeing's anti-harassment policies are being fairly implemented and enforced.

5.     <u>Record Retention/Destruction.</u>

Boeing had practices of not maintaining or creating documents pertaining to key employment decisions. Without such documents, there was little meaningful way for Boeing to monitor managers for gender-biased decision-making or to permit others, such as government agencies, to effectively evaluate Boeing's practices. Nor without such records could managers make informed employee-related decisions, since they lacked adequate information about a woman's performance. With this settlement, Boeing agrees to create and maintain key employment-related records, and class counsel shall have access to them to monitor Boeing's conduct for three years.

D.     <u>The Efforts of Class Counsel.</u>

The benefits created by the litigation and the Consent Decree, if approved, were the product of extensive efforts by class counsel. Rather than submit contemporaneous time records, which are voluminous and reflect confidential and privileged information, class counsel have summarized the records in their supporting declarations and would be pleased to make the records available for an *in camera* review by the Court, if requested. *See Gunter v. Ridgewood Energy Corp*, 223 F.3d 190, 200 (3d Cir. 2000) (appropriate for counsel to wait to submit actual time records until Court requested them); *see also In re Prudential Ins. Co.*, 148 F.3d 283, 332 n.107 (3d Cir. 1998) (time record summaries sufficient when Court used information only to cross check reasonableness of fee award).

To date, class counsel have invested more than 43,992 hours in this case over a period of nearly five years, and have yet to receive any compensation of any kind for their

CLASS COUNSELS' PETITION FOR ATTORNEYS' FEES AND EXPENSES (No. C00-0301P) – Page 8

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1   efforts. *See* Decl. of Helgren at ¶¶ 7-10; Declaration of Joseph M. Sellers ("Decl. of

2   Sellers") at ¶¶ 4-5, 12-16. In addition, class counsel have spent or incurred over $3

3   million to pay expenses for experts, copying, travel, transcripts and so on. At current

4   hourly rates, the fee lodestar is $10,500,541. *Id.* Expenses total $3,023,018, and when

5   adjusted for interest, are in excess of $3,290,984. *Id.* Compensation for class counsel's

6   efforts has been wholly contingent upon the result achieved. Where counsel receive

7   payment only at the conclusion of litigation, use of current hourly rates to calculate the

8   lodestar is appropriate to compensate for the delay in payment, as is an award of interest

9   on expenses advanced by counsel. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19

10  F.3d 1291, 1305 (9th Cir. 1994); *see also In re Coordinated Pretrial Proceedings*, 109

11  F.3d 602, 611 (9th Cir. 1997).

### III. STATUTORY AND CASE LAW SUPPORT APPROVAL OF THIS FEE PETITION

A.   Class Counsel Have Enforced the Civil Rights Laws.

12          Congress and the Supreme Court have recognized the importance of private

13  litigation as a necessary and desirable tool to assure the effective enforcement of the civil

14  rights laws. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416-18 (1978)

15  (Congress chose Title VII plaintiffs as private attorney generals to enforce equal

16  employment opportunities). In connection with the effective litigation of civil rights laws,

17  counsel are entitled to fee awards to ensure that private citizens are able to vindicate their

18  rights. *See* S. Rep. No. 1011, at 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5910

19  ("civil rights laws [such as Title VII] depend heavily upon private enforcement, and fee

20  awards have proved an essential remedy if private citizens are to have a meaningful

21  opportunity to vindicate the important Congressional policies which these laws contain").

22

23

24

25

26

CLASS COUNSELS' PETITION FOR ATTORNEYS'
FEES AND EXPENSES (No. C00-0301P) – Page 9

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

B.    The "Common Fund" Method is the Appropriate Method for Awarding Fees in This Litigation.

Where counsel create a settlement fund for the benefit of a class, they are entitled to reimbursement out of that "common fund" of the reasonable fees and expenses counsel incurred in successfully prosecuting the litigation. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980) (in common fund case, fee is spread proportionately among those who benefit from the suit); *Staton v. Boeing Co.*, 327 F.3d 938, 967-69 (9th Cir. 2000) (quoting *Van Gemert* and affirming use of common fund doctrine in discrimination cases); *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ("a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees"); *see also Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983) ("[a] litigant who creates a 'common fund' or 'substantial benefit' allocable with some exactitude to a definite group of persons may acquire an equitable claim against that group for the costs incurred in creating the fund or benefit"); *see generally* 1 Alba Conte, *Attorney Fee Awards*, §§ 2.01, 2.19 at 73-74 (2d ed. 1993) (hereinafter "Conte") (discussing rationale of common fund doctrine).

The fee awarded from the fund is typically based on a percentage of the fund, and is paid out of the fund itself. *See, e.g., Staton*, 327 F.3d at 967; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002), *cert. denied,* 537 U.S. 1018 (2002); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 695-96 (N.D. Ga. 2001); *see also Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Furthermore, under a common fund settlement, it is normal for a defendant to make a total cash payment encompassing both monetary relief and a payment for attorneys' fees. *See Evans v. Jeff D.*, 475 U.S. 717, 733-38 (1986).

A 25 percent fee award is the benchmark for common fund cases in the Ninth Circuit and elsewhere. *Staton*, 327 F.3d at 968; *Vizcaino*, 290 F.3d at 1047-50; *Hanlon v.*

CLASS COUNSELS' PETITION FOR ATTORNEYS'
FEES AND EXPENSES (No. C00-0301P) – Page 10

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1  *Chrysler Corp.,* 150 F. 3d 1011, 1029-30 (9th Cir. 1998); *Camden I Condo. Ass'n, Inc. v.*

2  *Dunkle,* 946 F.2d 768, 774-75 (11th Cir. 1991). In this case, by agreement of the parties

3  in the Consent Decree, class counsel request fees of 25 percent of the actual amount of the

4  common fund paid to the class (after subtracting the payment of $3 million for expenses)

5  up to a maximum award of $15 million. Pursuant to the Consent Decree, the Court may

6  award the amount requested by class counsel, or such other award as it deems proper –

7  whether less or more – and the parties' settlement is not contingent on the Court's fee

8  award. *See* Consent Decree at VIII.

9      Class counsel's fee request of 25 percent of the net actual recovery is particularly

10  conservative given that (1) courts in this Circuit allow fee award percentages to be applied

11  to the class's gross recovery, *Powers v. Eichen,* 229 F.3d 1249, 1258 (9th Cir. 2000);

12  *accord Staton,* 327 F.3d at 975; and (2) the Supreme Court has authorized application of

13  the attorney fee percentage in a common fund case to the overall fund created, regardless

14  of whether the funds actually paid out by the defendant are lower because of limited

15  participation, *Boeing Co. v. Van Gemert,* 444 U.S. at 477-80; *see also* 4 Alba Conte &

16  Herbert Newberg, *Newberg on Class Actions* § 14:6 at 570 (4th ed. 2002). Nonetheless,

17  class counsel here have acted conservatively and agreed to limit their fee request to 25

18  percent of the net award.

19      An examination of the fee awards contemplated at various levels of class member

20  participation also illustrates how conservative the fee request is. At the highest levels of

21  participation, class counsel's agreed fee request will be limited to the $15 million cap –

22  less than 21% of the settlement funds. At the lowest levels of participation, the agreed fee

23  request will result in lower fees than the lodestar value of fees class counsel have invested

24  in the case. (The lodestar value is typically the number of hours worked multiplied by the

25  hourly rates of those who did the work). Notably, a fee recovery of 20-25 percent would

26  be less than the amount frequently awarded in cases of this type. *See, e.g., Vizcaino,* 290

CLASS COUNSELS' PETITION FOR ATTORNEYS'
FEES AND EXPENSES (No. C00-0301P) – Page 11

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

F.3d at 1050 (upholding 28 percent fee award); *Elliot v. Sperry Rand Corp.*, 680 F.2d

1225, 1226 (8th Cir. 1982) (36 percent of total settlement awarded to attorneys); *In Re*

*Computron Software, Inc.*, 6 F. Supp. 2d 313, 323-24 (D.N.J. 1998) (awarding 25 percent

of fund plus $350,000 in costs and expenses after fifteen months of litigation and before

any deposition discovery); *see Barnhart v. Safeway Stores, Inc.*, No. Civ-S-92-803 (E.D.

Ca. 1994) Consent Decree at 28, 32 (Decl. of Helgren, Ex. C) (attorneys paid 33 percent

of total recovery). Clearly, the fees requested are conservative. Indeed, at the lower

levels of participation, such fees will not fully compensate class counsel for the time and

money they have invested to date.

C.    The Fee Request Satisfies the Standards for Reasonableness.

In evaluating a fee request, the Ninth Circuit has identified several factors to be

considered including: (1) the quality of result achieved for the class; (2) the risk to class

counsel; (3) the benefits to the class beyond the cash settlement fund; (4) the market rate;

and (5) the extensiveness of the litigation and its effect on counsel's opportunity to take on

other work. *Vizcaino*, 290 F.3d at 1047-50. A review of these factors makes clear that

class counsel's fee request is reasonable.

1.    Class Counsel Achieved a Substantial Benefit for the Class.

Class counsel obtained a $40.6 to $72.5 million cash settlement on behalf of the

class. This cash element is both substantial and highly beneficial to the class. Indeed, it

guarantees that every class member will receive a minimum of $500 if she submits a valid

claim form. Most will likely receive many times that amount.

Moreover, the class had already benefited from the litigation by changes made by

Boeing after the initiation of this lawsuit (*see* § II.B., *supra*) and will receive new

economic opportunities in the future in response to the changes required by the Consent

Decree (*see* § II.C, *supra*). The amounts class members have received since the lawsuit

CLASS COUNSELS' PETITION FOR ATTORNEYS'
FEES AND EXPENSES (No. C00-0301P) – Page 12

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    was initiated, the cash amounts paid to settle the claims, and the monies and benefits the

2    class will receive in the future justify the requested attorneys' fees.

3         2.    Litigating the Case Posed Substantial Risks.

4         When this case was filed, there was a risk that the Court would not certify the

5    claims.  Recent cases in the Fifth Circuit and elsewhere had called into question whether

6    cases of this type could be certified.  *See, e.g., Citgo v. Allison,* 151 F.3d 402 (5th Cir.

7    (1998) (calling into question the propriety of Title VII class actions following the 1991

8    enactment of 42 U.S.C. § 1981a); *see also Reid v. Lockheed Martin Aeronautics Co.,* 205

9    F.R.D. 655 (N.D. Ga. 2001) (denying certification pursuant in part to *Allison* analysis);

10   *Miller v. Hygrade Food Prods.,* 198 F.R.D. 638 (E.D. Pa. 2001) (same); *Burrell v. Crown*

11   *Central Petrol., Inc.,* 197 F.R.D. 284 (E.D. Tex. 2000) (same); *Zachary v. Texaco Explor.*

12   *& Production Co.,* 185 F.R.D. 230 (W.D. Tex. 1999) (same); Daniel F. Piar, *The*

13   *Uncertain Future of Title VII Class Actions After the Civil Rights Act of 1991,* 2001

14   B.Y.U. L. Rev. 305 (2001); Gary Kramer, *No Class:  Post-1991 Barriers to Rule 23*

15   *Certification of Across-the-Board Employment Discrimination Cases,* 15 The Labor

16   Lawyer 415 (2000).  Once the case was certified, Boeing immediately petitioned the Ninth

17   Circuit to review the decision, claiming the authorities precluded certification.

18        Even after certification there were substantial trial risks.  For example, a jury

19   might have found Boeing's theory of the case more plausible.  Likewise, there were risks

20   that a jury could have found the case too complex or found the statistical analyses too

21   confusing.  Furthermore, the issue of whether the plaintiff class would be certified for

22   back pay remained uncertain, which posed a substantial risk at trial.  Unless backpay was

23   certified, the only monetary relief available was punitive damages which has a higher

24   standard of proof than simply establishing liability for discrimination.  Plaintiffs risked

25   recovering nothing at trial. There were additional risks that a jury might find Boeing

26   liable, but award less than the amount of the Settlement Fund.  Finally, even if plaintiffs

CLASS COUNSELS' PETITION FOR ATTORNEYS'
FEES AND EXPENSES (No. C00-0301P) – Page 13

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1   prevailed, it was certain that Boeing would appeal.  At the very least, an appeal would

2   have delayed any compensation or other relief.  Since class counsel's compensation was

3   contingent upon success, class counsel faced substantial risk of nonpayment.

4          In this regard, it is significant that Boeing has routinely prevailed on gender

5   discrimination claims, both in the trial courts and on appeal.  *See, e.g., Jacobs v. Boeing*

6   *Co.*, 2003 WL 23019019 (9th Cir. Dec. 22, 2003) (affirming summary judgment dismissal

7   of lawsuit alleging retaliation for opposition to discrimination); *Housley v. Boeing Co.*,

8   2002 WL 31478903 (10th Cir. Nov. 6, 2002) (affirming summary judgment dismissal of

9   retaliation, sex and age discrimination claims); *Huff v. Boeing Co.*, 1997 WL 684075 (9th

10  Cir. Oct. 23, 1997) (affirming Rule 52(c) judgment for Boeing in action alleging

11  retaliation, gender and age discrimination); *DeVault v. Boeing Defense & Space-Oak*

12  *Ridge, Inc.*, 1996 WL 26924 (6th Cir. Jan. 23, 1996) (affirming bench trial judgment for

13  Boeing on gender discrimination claims); *Schaede v. Boeing Co.*, 1995 WL 736464 (10th

14  Cir. Dec. 13, 1995) (affirming summary judgment dismissal of various claims, including

15  gender discrimination); *Knutson v. Boeing Co.*, 655 F.2d 999 (9th Cir. 1981) (affirming

16  post-trial dismissal of gender discrimination claim); *Dator v. Boeing Co.*, 2001 WL

17  1833950 (W.D. Wash. Dec. 27, 2001) (summary judgment dismissing gender

18  discrimination claims for failure to exhaust administrative remedies); *Lenihan v. Boeing*

19  *Co.*, 994 F. Supp. 776 (S.D. Tex. 1998) (summary judgment dismissing sexual harassment

20  and failure to promote/overtime gender discrimination claims); *Mathis v. Boeing Military*

21  *Airplane Co.*, 719 F. Supp. 991 (D. Kan. 1989) (summary judgment dismissing race and

22  sex discrimination claims); *Schneider v. Boeing N. Am. Co.*, 2004 WL 759296 (Cal. App.

23  Apr. 9, 2004) (affirming unanimous jury verdict in favor of Boeing in age, gender and

24  national origin discrimination action); *LaMarche v. Boeing Co.*, 2002 WL 31372049 (Wn.

25  App. Oct. 21, 2002) (affirming summary dismissal of gender discrimination and

26  retaliation claims); *Jefferson v. Boeing Co.*, 2001 WL 919989 (Wn. App. Aug. 10, 2001)

CLASS COUNSELS' PETITION FOR ATTORNEYS'
FEES AND EXPENSES (No. C00-0301P) – Page 14

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1   (affirming summary judgment dismissal of race and gender discrimination claims);

2   *Washington v. Boeing Co.*, 105 Wn. App. 1, 19 P.3d 1041 (2000) (affirming summary

3   judgment dismissal of sex and race discrimination claims); *but see Davis v. Boeing*

4   *Helicopter Co.*, 1990 WL 131539 (E.D. Pa. Sept. 12, 1990) (bench trial verdict in favor of

5   plaintiff in sex discrimination case). Such cases illustrate the risks faced by the class and

6   its counsel.

7        Further, even if plaintiffs had prevailed at trial, they faced substantial risks on

8   appeal. Punitive damage awards have often lead to protracted post-trial appeals, remands,

9   and further appeals. *See, e.g., In re Exxon Valdez*, 229 F.3d 790 (9th Cir. 2000), *appeal*

10  *after remand* 239 F.3d 985 (9th Cir. 2001), *appeal after remand* 270 F.3d 1215 (9th Cir.

11  2001), *remanded to* 236 F. Supp. 2d 1043 (D. Ak. 2002) (vacated and remanded by Ninth

12  Circuit, Aug 18, 2003), 296 F. Supp. 2d 1071 (D. Ak. 2004).

13       3.    <u>Class Counsel Negotiated Important Programmatic Relief</u>.

14       As part of the negotiated settlement, Boeing has agreed to change various

15  personnel procedures and practices, including pay, promotion, overtime, and its equal

16  employment opportunity ("EEO") complaint procedure. *See* §§ II.C.1 through 5, *supra*.

17  This substantial non-monetary relief supports the reasonableness of the fee request.

18       4.    <u>Duration of Litigation</u>.

19       Class counsel have worked on this case since 1999. Counsels' efforts include

20  preparing for, taking, and/or defending 250 depositions. To prepare, counsel reviewed

21  approximately one million documents. Scores of motions were litigated to obtain or use

22  significant evidence. Class counsel litigated hard-fought motions for class certification,

23  one of which was appealed to the Ninth Circuit, and later litigated multiple motions for

24  summary judgment. This case required a huge investment of time and resources. The

25  time required to pursue this hotly-contested litigation deprived class counsel of the

26

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1   opportunity to invest time and resources into other cases. These factors further support

2   the reasonableness of the fee request.

3        Because the action settled on the eve of trial, class counsel spent a substantial

4   amount of time preparing for trial, including responding to Boeing's prolific motions in

5   limine. Collectively, there were 11 testifying experts as well as other consulting experts.

6   Class counsel worked extensively with the experts in preparing reports, preparing for

7   depositions, and responding to defendant's experts. Again, the extensive effort required to

8   litigate this matter supports the requested fees.

9        5.    Market Rate.

10       The median rate for attorneys' fee awards in class actions ranges from 27 to 30

11  percent. *In re DJ Orthopedics, Inc.*, 2004 WL 1445101, *7 (S.D. Cal. June 21, 2004),

12  *citing* Thomas E. Willging, et al., *Empirical Study of Class Actions in Four Federal*

13  *District Courts: Final Report to Advisory Committee on Civil Rules*, at 69 (Federal

14  Judicial Center 1996). Here, class counsel's request for 25 percent (with a cap) of the

15  Settlement Fund falls below the median range for class action fee awards. In light of the

16  factors outlined above, the fee request is conservative and the Court should award class

17  counsel at least the attorneys' fees sought.

18       6.    The Requested Fee is Justified by Any Lodestar Comparison.

19       Class counsel seek a fee in the range of $9.4 to $15 million. Their fees at current

20  hourly rates equal $10,500,541. That amount exceeds $9.4 million, and $15 million is

21  only a 1.43 multiple of the actual fees. The cases allow actual fee multiples that

22  significantly exceed 1.43 for matters such as this litigation. *See Vizcaino*, 290 F.3d at

23  1050-55 (affirming multiplier of 3.65; recognizing that 54 percent of class action fee

24  awards use multipliers ranging from 1.5 to 3.0); *In re Prudential Ins. Co.*, 148 F.3d at 341

25  (noting that multipliers of one to four are frequently awarded in common fund cases when

26  lodestar method is applied); *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118,

CLASS COUNSELS' PETITION FOR ATTORNEYS'
FEES AND EXPENSES (No. C00-0301P) – Page 16

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    126 (S.D.N.Y. 2001) (finding a 1.9 multiplier to be fair); *see generally* 4 *Newberg on*

2    *Class Actions, supra* at § 14:7.

3    D.    Reimbursement and Payment of Class Counsel's Expenses is Appropriate.

4         Consistent with principles of equity, the Court can designate a portion of the

5    common fund to cover expenses incurred in the creation of the common fund. *In re*

6    *Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366-67 (N.D. Cal. 1996) (awarding

7    expert, consultant, and investigator fees and expenses from common fund); *In re*

8    *Chambers Dev. Sec. Litig.*, 912 F. Supp. 852, 863 (W.D. Pa. 1995) (expert and consultant

9    fees are reimbursable expenses).  In addition to expert and consultant fees, reimbursable

10   expenses include witness fees, transcripts of hearings and depositions, telephone and

11   copying charges, travel, postage and computerized legal research expenses. *In re Media*

12   *Vision,* 913 F. Supp. at 1366-67; Conte, *supra* § 2.19 at 75-77.  Finally, it is reasonable to

13   pay the cost of class notice from the fund because it benefits plaintiffs. *Staton*, 327 F.3d

14   at 975.  Class counsel's request for reimbursement of $3,000,000 for expenses (before

15   interest) is reasonable and appropriate based on the actual expenses incurred throughout

16   this litigation, as supported by the declarations and documentation of class counsel.

17   E.    It is Appropriate to Pay Class Counsel a Portion of Their Fees on the Effective
             Date or by January 15, 2005.
18
19        Class counsel also request that the Court order Boeing to pay class counsel 25

20   percent of the minimum possible class net recovery, for counsel's attorney fees, and $3

21   million for litigation expenses incurred to date, by the Effective Date of the Consent

22   Decree or by January 15, 2005, whichever date is later.  This amount totals $12,400,000

23   ($40.6 million - $3 million x .25 = $9,400,000 for fees, plus $3 million for expenses).

24   Payment of a portion of the attorneys' fees and expenses upon the Effective Date is

25   permitted in this district and elsewhere. *See Vizcaino v. Microsoft Corp.*, No. C98-1646C,

26   2001 U.S. Dist. LEXIS 5976, *26 (W.D. Wash. Mar. 26, 2001) ("75% of the attorney fee

CLASS COUNSELS' PETITION FOR ATTORNEYS'
FEES AND EXPENSES (No. C00-0301P) – Page 17

LAW OFFICES OF
McNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1  award to be distributed to class counsel will be disbursed from the Fund within fourteen

2  days following the Effective Date"); *In re Prudential Ins. Co.,* 106 F. Supp. 2d 721, 722-

3  25 (D.N.J. 2000) (describing interim fee awards made by district court).  It is appropriate

4  for class counsel to be reimbursed, at least partially, for its five years of fees and expenses

5  when the class begins to receive the injunctive relief benefits created through the efforts of

6  class counsel.  However, class counsel has agreed to delay receipt of the partial

7  reimbursement until the later of that date, i.e., the Effective Date, or January 15, 2005.

8          DATED this _____ day of August, 2004.

9          Respectfully submitted,

10

11  By: _____          By: _____

12  Michael D. Helgren, WSBA No. 12186          Joseph M. Sellers
     Barbara H. Schuknecht, WSBA No. 14106      Christine E. Webber

13  McNaul Ebel Nawrot Helgren          COHEN, MILSTEIN, HAUSFELD
       & Vance, PLLC                        & TOLL, P.L.L.C.

14  600 University Street, Suite 2700          1100 New York Avenue, N.W.
     Seattle, WA 98101-3143              West Tower, Suite 500

15                                       Washington, DC 20005

16  Counsel for Plaintiffs

17

18

19

20

21

22

23

24

25

26

CLASS COUNSELS' PETITION FOR ATTORNEYS'
FEES AND EXPENSES (No. C00-0301P) – Page 18

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1285-003 qh022001 8/6/04

# CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties below:

Ms. Nancy Williams
Perkins Coie LLP
Suite 4800
1201 Third Avenue
Seattle, WA  98101

Mr. C. Geoffrey Weirich
Paul, Hastings, Janofsky & Walker LLP
Suite 2400
600 Peachtree Street NE
Atlanta, GA  30308

DATED this 6th of August, 2004, at Seattle, Washington.

_/s/Barbara H. Schuknecht_____
Barbara H. Schuknecht

CERTIFICATE OF SERVICE (No. C00-0301P)

LAW OFFICES OF
MCNAUL EBEL NAWROT HELGREN
& VANCE, P.L.L.C.
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816